Gaston, Judge,
 

 after stating the case as above, proceeded as follows: All the exceptions and objections taken below to the alternative
 
 mandamus,
 
 have been urged here in the argument for the defendants. In support of the objection that the writ is illegal, and ought to be quashed, because it did not issue'at least ten days before the day on which it was made returnable, the counsel for the defendants relies on the 63rd section of the act “concerning Courts of Justice, Practice, Pleas and Process,” 1 Rev. Stat. ch. 31. By this it is enacted, that all writs and other civil process, (except subpoenas returnable immediately,) shall be returned the first day of the term to which they may be returnable, and be executed at least ten days before the beginning of the term, when returnable to a Superior Court, or five days, when returnable
 
 *133
 
 to a Comity Court — and it is further enacted, that if any iginal or mesne process shall be taken out within the time above specified, before the beginning of the term of a Court, it shall be made returnable to the term next thereafter. All process made returnable at any other term, or executed at any other time, or in any other manner, than is thus prescribed is to be adjudged void on the plea of the defendant. The writ before us does not fall within the
 
 letter
 
 of this section. It was taken out — or rather
 
 issued
 
 during term time, and not before the beginning of the term. But it is manifest, we think, that the provisions of this section are inapplicable to, and were not intended to have any operation upon, the prerogative writ of
 
 mandamus.
 
 Their operation is confined to writs and process used to commence, or in the course of prosecution of, ordinary actions for the assertion of private rights or the redress of private wrongs, “ taken out” by the parties from the officers of the Court, without any special order of the Court. The
 
 mandamus
 
 is an extraordinary remedy — ■ never issuing but by the express order of the Court, whose high prerogative it is, when no other adequate remedy can be found, and there would otherwise be a failure of justice, or defect of police, thereby to compel inferior courts, .corporations or persons, to perform some specific and known duty. Such a writ can only issue when a necessity for it is shewn —and from its very nature it should issue, be made returnable, and be returned, accordingly as the necessity that calls for it may require.
 

 In England these writs are not infrequent; and with a view to uniformity of practice, the courts there have laid down some
 
 general rules.
 
 Amongst these we find it stated in an
 
 anonymous case, 2
 
 Salk. Rep. 434, that the court on the first day of that term made a rale, that if the corporation to which a
 
 mandamus
 
 was sent was more than forty miles from London, there should be
 
 fifteen
 
 — or, as the rule is more accurately recited in
 
 Rex
 
 vs.
 
 Dover, 2
 
 Stra. Rep. 407,
 
 fourteen
 
 — days between the
 
 teste
 
 and return of the first writ; but if but forty miles or under, eight days only. Whether this rule has been applied to any other cases than those involving disputes about corporate offices, franchises and du
 
 *134
 
 ties, it is unnecessary to enquire, as it cannot for a moment doubted but that on a proper case shewn the court would make a
 
 special order
 
 for the return of any
 
 mandamus
 
 ''W^ich i*1 ™gbt command to be issued. With us the
 
 mandamus
 
 is scarcely known in practice. Until this controversy, our books of reports furnish us but with two instances in which such a writ has been awarded.
 
 Delacy
 
 vs.
 
 Neuse River Navigation Co.
 
 2 Hawks Rep.
 
 274
 
 —State
 
 on the relation of Dickens
 
 vs.
 
 Justices of Person,
 
 4 Dev. Rep. 406. No general rules of practice have yet been prescribed in relation to them; and therefore in each case it is the province of the court by which the writ may be awarded to fix the day on which it should be made returnable.
 

 Nor is it proper — much less necessary. — .that the writ should declare that there is no other remedy for the mischief which it Commands to be removed. The court indeed will not, ordinarily at least, interfere by
 
 mandamus
 
 when there is another specific legal
 
 remedy
 
 — and
 
 it is therefore,
 
 a good cause for quashing
 
 a mandamus
 
 that
 
 the case
 
 set forth in it does not call for this extraordinary interposition. Thus in the case of the
 
 King
 
 vs.
 
 Margate Pier Company,
 
 3 Barn. & Ald. 220, (5 Eng. Com. Law Rep. 266) a writ of mandamus to a corporation commanding them to pay a poor’s rate was quashed, because it did not state that the corporation had no effects upon which a distress could be levied. The remedy by distress was the regular, ordinary, and in general, adequate remedy; and if there existed any fact which rendered the use of it impracticable or insufficient, and therefore warranted a resort to the extraordinary remedy of
 
 mandamus, that fact
 
 should be averred in the writ distinctly, so as to put it in the power of the defendants to traverse such fact in their answer. Upon examining the precedents, it will be- found that writs of
 
 mandamus
 
 contain no recital that another remedy is not to be had, but only the desire “that due and speedy justice should be done in that behalf.” 6 Wentw. Plead. 305 to 356. Indeed, if the case set forth in the writ be one in which there is no other specific remedy — cm
 
 bono
 
 is this conclusion of law to be stated? Do not the court know it? All that is wanted to warrant and demand their interposition
 
 *135
 
 is a verified statement of the necessary facts. It is their duty to know the law arising on the facts.
 

 The objection that the rvrit should have been
 
 directed
 
 to all the commissioners, whose duty it was to perform the act required, has been strongly pressed upon us; and, to show that such is the regular course of proceeding, a case lias been quoted from
 
 2
 
 Chitty’s Reports, 254, where, on an application for a
 
 mandamus
 
 against one of the churchwardens of a parish, to concur in a rate with the overseers, it was said, by the Court, “you must take the
 
 mandamus
 
 against the whole of the parish officers, against yourselves as well as the other overseer — it has often been so done.” , We admit fully the correctness of the doctrine contended for by the defendants, and yet hold that their objection is not sustained. The writ might indeed have been more
 
 formally
 
 directed to each and every of the seven commissioners, but upon this record it must be held that it was so directed. The
 
 mandamus
 
 prayed for in the petition is a
 
 mandamus^ directed to all.
 
 The petitioners, three of the commissioners, admit service of the
 
 mandamus,
 
 and declare that they are ready to act. A writ is then
 
 addressed
 
 to the other four only, because their colleagues have accepted service, and the act whieh the four are ordered to do, or shew cause to the contrary thereof, is an act in company with their colleagues, and in which their colleagues are by virtue of their express assent of record bound to join under the penalty of a contempt. The three petitioning commissioners who acknowledge service of the alternative
 
 mandamus
 
 declare that they have no cause to shew wherefore the act ordered should not be done. And if the others, to whom an opportunity is thus afforded of shewing cause, offer none, then
 
 all
 
 having been
 
 directed
 
 to do the act, or signify wherefore they do not, the peremptory
 
 mandamus
 
 properly issues against
 
 all
 
 as prayed for.
 

 The remaining exceptions and objections present the enquiry, whether there was error in the Court below adjudging that service had been made of the
 
 mandamus
 
 upon Edney, Jones and Allen? It is one of the first principles of natural justice, one which seldom is, and never ought to be, lost sight of in municipal law, that no man should be condemned un
 
 *136
 
 heard; and in furtherance of this principle, process, or notice *n ^13 nature of process, almost invariably issues, to summon, warn, or compel a party to appear in Court, and hear the complaint against him, or shew cause, if any he has, against that complaint, before any adjudication is made. In general, the form of this process or notice, as well as the manner of its service, is positively prescribed by law; but, in many cases,
 
 these
 
 must necessarily be left to the sound sense and discretion of the Courts of Justice — bound, as they must always feel themselves to be, to keep steadily in view the great principle above stated. As to the manner of serving notices of the nature of that before us, we have nothing more explicit in our legislation than is to be found in the act “ concerning Courts of Justice,” 1 Rev. Stat. ch. 31, sec. 126, 127. These make it the duty of the sheriff to serve all notices which are required to be given, in the course of any cause, motion or proceeding, either at law or ir. equity,
 
 “
 
 by delivering a true copy of the same to the person to whom it shall be directed, (if to be found in his
 
 county,) or by
 
 leaving a copy
 
 thereof at the
 
 usual place of abode of such person, if in his county;” and make the sheriff’s return evidence of service, in the manner and at the time stated in such return. This act removes the difficulty started because of the want of an affidavit of service; but it leaves open the question, when is personal service necessary; and rvhen will a service, by leaving a copy at the dwelling house, be sufficient? For
 
 the
 
 determination of this question, where the law is silent, it seems to us the true criterion in general is — for what object is the service of process intended or insisted upon? Is the service of the notice or process intended to bring the party into contempt, by founding thereon a motion against him for attachment? If it be, the service must be personal, if possible; but if personal service be not possible, and there is probable cause to suspect that the party keeps out of the way to avoid it, the Court may make an order that leaving notice at the dwelling house shall be sufficient. If, however, the service is not to be made the groundwork of a proceeding to punish, but is relied on merely to assure the Court that a fair opportunity has been afforded for objecting against a rule or pro
 
 *137
 
 ceeding,
 
 prima facie
 
 just, there personal service is not necessary, and the other species of service, if the court deem it reasonable, is in law sufficient. See 1 Tidd’s Prac. 2nd Am. from 8th Lon. Ed.
 
 505
 
 —Weston vs.
 
 Falkner, 2
 
 Price Rep. 2—same 4—
 
 K
 
 ing vs.
 
 Smithers,
 
 3 Term Rep. 351—
 
 King
 
 vs.
 
 Edgrean, ibid,
 
 352. When no answer or return of cause is made to an alternative
 
 mandamus,
 
 the Court may be moved for an attachment against the persons to whom it has been directed. And, in such a motion, we think the attachment ought to be refused, unless there has been a personal service of the writ, or such a service as the Court, by special order, under the circumstances of the case, may direct. But the Court, instead of proceeding by attachment for contempt, because cause is not shewn, may direct a peremptory
 
 mandamus
 
 to issue — simply regarding the alternative
 
 mandamus
 
 as in the nature of a rule to shew cause why an absolute
 
 mandamus
 
 should not issue. See
 
 People on relation of Temper
 
 vs.
 
 Judges of Ulster,
 
 1 John. Rep. 64. And, to justify this course, personal service of the rule, or the writ in nature of a rule, is not necessary, for the award of the peremptory
 
 mandamus
 
 operates, not in the nature of punishment, but as a command to execute an ascertained duty.
 

 Having arrived at this conclusion, we think it necessarily follows, that it was within the exclusive province of the Court below to determine whether the actual service was a reasonable service or not. It is not for us, therefore, to revise the judgment which the Court formed upon that subject. It may be permitted for us, however, to say, that his Honor was called upon, by the plainest and strongest considerations of duty, not to lend a favorable ear to any objections on this score, which were not of a very substantial kind. It is not to be concealed that the dispute in this case — as well as the dispute in the case before us at the last term — is, in truth, a contest between two parties, which have distracted the county of Henderson, upon the question where the county town shall be fixed, and the public buildings erected. Public order — the dignity of the laws — the decorous administration of justice — demand that this controversy should be settled as speedily as the
 
 right
 
 of the matter can be ascertained, and
 
 *138
 
 judicial forms will permit. In truth, that right had been ascertained. — deliberately ascertained. — in the case of
 
 King and
 
 others, where the merits of the controversy were passed upon in the Superior Court, and afterwards re-asserted in this Court upon appeal. It could not be doubted but that this decision was quickly and generally promulgated throughout the* county of Henderson; and that the party which had failed upon the merits, well knew that if they continued further resistance, the adverse paity would unquestionably move for the precise remedy now sought for. - When, therefore, upon this motion being made, it was seen that but one of the recusant commissioners could be
 
 found, on whom to serve
 
 notice of the
 
 motion
 
 — that when he appeared in Court, instead of shewing cause against the writ moved for, he interposed formal objections only for the purpose of delay. — that when the writ did issue,
 
 none
 
 of these commissioners could be found, and he who had before appeared, gave way to another, who, instead of putting in any answer to the writ, sought, by every astute exception and technical
 
 objection, to
 
 embarrass and protract the proceedings. — that no affidavit was offered shewing why further delay was necessary for any purpose of individual or public right; nor accounting for the sudden disappearance from home of all the resisting commissioners; nor furnishing any reason for the Court to doubt that in truth every one of them was fully aware of the proceeding, and that all were concurring in the opposition ostensibly conducted by one only'of their body. — under these circumstances, whatever form of notice the law would
 
 permit
 
 to answer for the purpose of administering justice, the minister oi the law was justified in holding to be
 
 sufficient
 
 notice.
 

 The judgment of the Superior Court is to be affirmed.
 

 Per Curiam. Judgment to be affirmed.