Jewett, Ch. J.
 

 delivered the opinion of the court.
 

 The principal question made in this case is, whether the complainants are entitled to one seventh part of the principal sum of $20,570,77, which the executors of Isaac Clason have received under the award of the commissioners appointed pursuant to the treaty of the 4th of July, 1831, made between the government of France and the United States.
 

 Isaac Clason "died in the year 1815, having a claim for indemnity against the French government, for the illegal capture of certain vessels and their cargoes, for which the said award was made, and said sum paid to his executors. He left seven children, four daughters and three sons, of whom Isaac Starr Clason was one. By his last will, he directed his executors, of whom the defendant Delaplaine is the survivor, to pay his funeral expenses and just debts out of his personal estate, and after making a provision for' his wife, and a specific bequest to one of his daughters, and devising certain real estate situate in Westchester county, he devised all of his real estate in the city and county of New-York to his seven children and to their heirs, to be equally divided between them in the year 1820. He gave all his personal estate, subject to the payment of his debts, and of certain legacies and charges, to his three sons, with the income thereof to accumulate until the year 1820, and to be then equally divided between them, and if either of them should have died in the mean time, the share of such to go to his legal representatives.
 

 The executors of the deceased made and filed with the surrogate an inventory of his personal estate which came to their hands or knowledge; but having no knowledge or information
 
 *400
 
 of the existence of said claim for .indemnity for the French spoliations, it did not contain it; and such persona] estate being insufficient to pay the debts of the deceased, the executors, pursuant to an order made by the surrogate of the city and county of New-Yorkin 1816, sold a considerable portion of the real estate of which the testator died seized in said city, but which left debts unpaid amounting to rising of $63,000, to satisfy which, under another order made by said surrogate, the executors, in 1817, sold other portions of said real estate situate in New-York, sufficient to satisfy said balance, and to leave a surplus of over $30,000. The complainants claim that inasmuch as the personal estate of the testator was the primary fund for the payment of his debts, and the real estate in the city of New-York devised to his seven children in equal parts, had been sold under the orders of the surrogate to a much larger amount than the moneys so received by the executors under said award, ■ and applied to the payment of such debts, the children of the testator and devisees of said lands are entitled in equity to receive the moneys so awarded and received under said treaty, in exoneration or compensation, as far as it will extend, of the burdens imposed upon their said real estate by such orders and sales, and that the complainants, as the surviving grantees and assignees in trust of the share or portion to which said Isaac Starr Clason would have been entitled, are entitled to one seventh part of the said moneys received by said executors under said award for the claim of the deceased for indemnity as before mentioned.
 

 It is obvious that as the testator’s personal estate was insufficient to pay his debts, his three sons were -not entitled to any portion of it, as legatees under his will. But as this claim of the testator from which this fund has been received, was a part of his personal estate, and as such, should have been applied, if it had been discovered, to the payment of the testator’s debts, and the real estate devised to the seven children has been sold and the avails applied instead thereof, they have an equitable right to be indemnifiec out of such fund or so far as it will go, for the application of their lands in payment of such debts,
 
 *401
 
 Therefore Isaac Starr Clason, or if he has assigned his interest therein, his assignee is entitled to one-seventh part of said fund.
 

 The said Isaac S. Clason, on the 29th day of April, 1820, executed an assignment to Eliakim Lockwood, his executors, administrators and assigns, of “ all the legacy and personal estate, given and bequeathed to the said Isaac Starr Clason, in and by the last will and testament of Isaac Clason, late of the city of New-York, merchant, deceased, and also all the share, part and interest, which the said Isaac Starr Clason hath in the personal estate of his said late father, and now in the hands of the executors of the said last will and testament,
 
 or which hereafter may come into their hands, or into the hands of any or either of them, and which he may be entitled to upon the distribution of 'the personal estate of the said Isaac Clason, deceased.”
 
 On the first day of May, 1820, said Isaac S. Clason and Mary his wife, by their deed of that date, conveyed to Eliakim Lockwood certain described lots, pieces and parcels of lands, “and also all and singular the undivided seventh part of all the other lands and real estate, which Isaac Clason, late of the city of New-York, died seized and possessed of in the state of New-York, and not before granted and conveyed by the said parties of the first part to the said party of" the second part, or not heretofore granted and conveyed by the executors of the last will and testament of the said Isaac Clason.”
 

 On the 29th day of May, 1821, Eliakim Lockwood having become embarrassed, assigned a part of his real and all his personal estate to David Stebbins, Eldad Holmes, and William Couch, as trustees for the benefit of certain of his creditors. Holmes and Couch, the surviving trustees, are the complainants in this suit.
 

 On the 12th day of December, 1824, said Isaac S. Clason executed to said Stebbins, Holmes and Couch, an assignment under his hand and seal, by which after reciting, that he by a certain deed indented, bearing date on the 29th day of April, 1820, assigned unto Eliakim Lockwood, all his interest in the personal estate of his said late father, the said Isaac Clason, deceased, then in the hands of the executors of the last will
 
 *402
 
 and testament of his said father, or which might thereafter come into their hands; and that afterwards said Lockwood assigned to said Stebbins, Holmes and Couch, all his interest in the property so assigned, on certain trusts, and that questions had arisen concerning the true meaning of the parties to the said first assignment, and that it had been agreed that the said Isaac S. Clason should receive out of the moneys then in the hands of the said executors, and arising from the estate of the said Isaac Clason, deceased, $850; and should assign to said Stebbins, Piolines and Couch, “ all his right to all moneys which now are, or may hereafter be in the hands of the said executors, and arising or to arise from the estate real or personal of his said father;” therefore in consideration of the premises, &c. did thereby grant, bargain, sell, assign and set over unto the said Stebbins, Holmes and Couch, their executors, administra tors and assigns, “all my share, part, interest, claim and demand, in and to the personal estate of my said father, and in and to all moneys which now are or may hereafter come into the hands of the said executors, and arising from any property or estate of my said father, whether real or personal, except the said sum of eight hundred and fifty dollars.”
 

 The assignment made by Clason to Lockwood of the 29th of April, 1820, in terms is limited to the legacy and personal estate given and bequeathed to Clason by the will of his late father, and to the share, part and interest which Clason had in the personal estate of his said father, then in the hands of his father’s executors, or which should thereafter come into their or either of their hands, and which Clason might be entitled to, upon the distribution of the personal estate of his father. It has already been observed, that the debts-of the testator, in amount, greatly exceeded the value of his personal estate, which by the language of the will were to have been paid out of his personal estate, and the bequest to Isaac S. and his two brothers, being subject to that as well as other charges, it is evident that there was not/ either at the time of making that assignment or at any subsequent period any personal estate of his father’s or any interest in any in the hands of his executors, to which
 
 *403
 
 Clason was or could be entitled upon tie distribution of such personal estate. The moneys arising from the claim for indemnity against the French government, it is true, was personal estate of his father; but that, if it had been known and been available, would have been applied in the payments of his debts and would have relieved to that extent the lands devised to the seven children, which instead of that fund was converted into money and used in the payment of debts previous to any assignment of either real or personal estate by Clason to Lockwood ; and when that claim was enforced and the fund in question received, Clason’s claim to a portion of it was not founded upon his right to the legacy bequeathed to him, nor to any right to share in the distribution' of the personal estate of his father. But his right to it resulted to him, by reason that his interest in that amount of land devised to him had been sold and the proceeds applied to the payment of the debts of the testator, which should and would have been paid in exoneration of his land by said fund, if it had come to the hands of the executors previously. I therefore agree in opinion with the supreme court, that this assignment did not pass to Lockwood, Clason’s interest in any portion of the fund to which he thus became entitled.
 

 I cannot doubt, however, but that the words of the assignment of December 12, 1824, are sufficiently comprehensive to pass all of his share in and to the fund in question. Unless the language used is thus large, it is difficult to conceive how such a claim could be transferred by an assignment. The language employed is the most comprehensive that could have been used to convey such right or claim, unless, indeed, it had identified the claim by words particularly describing the specific claim which the testator had for indemnity for such illegal captures. They are “ all my share, part, interest, claim and demand in and to the personal estate of my said father, and in and to all moneys which now are or may hereafter come into the hands of the said executors and arising from any property or estate of my said father, whether real or personal, except the said sum of eight hundred and fifty dollars.” Now the fund in question came into the hands of the executors of the testator,
 
 *404
 
 after the execution of the assignment. It arose from the estate of the testator, and the assignor, it is conceded, had a valid
 
 claim,
 
 to the one-seventh part thereof. How then can it be doubted, admitting the capacity of-the assignor to make a contract, but that this claim passed by this assignment, unless there is something to restrict the clear import of these general and comprehensive words ? It is said that it was not
 
 intended
 
 by the parties that this assignment should have the effect to pass Clason’s claim to this fund to Stebbins, Holmes and Couch, and one ground of this argument is founded upon the assumption that the existence of the claim of the testator, even, was not known to the parties at that time. It is true, that it is a rule in the construction of contracts, that the words must be construed according to the
 
 intention
 
 of the parties, and to give effect to them as far as they are legal and mutually understood. But such
 
 intention
 
 must be collected, as a general rule, from the words used in the contract; and if they are neither uncertain lor ambiguous, the contract is to be construed according to its apparent import.
 
 (Story on Contracts,
 
 §§ 231, 235;
 
 Miller
 
 v.
 
 Travers,
 
 8
 
 Bing.
 
 244;
 
 Throckmorton
 
 v.
 
 Tracy, Plowd.
 
 100.) The fund in question is clearly within the import of the language used to express the intention of the parties making the contract, as it respects the subject matter of the assignment. And although I might suppose that it is not probable that the parties in fact had in view Clason’s interest in this fund, to arise from that claim, when the contract was made, the question returns, can that be collected from the words of the contract ? It seems to me to be clear that it cannot.
 

 A recital in a deed or agreement may be looked at, in order that the meaning of the parties to it may be ascertained. And the general words of a subsequent distinct clause, or stipulation, may often be explained or qualified by the matter recited. In this instrument it is recited,
 
 First.
 
 That Isaac S. Clason, by a certain deed indented, bearing date the 29th day of April, 1820, did assign to Lo.ckwood all his interest in the personal estate of his said late father, Isaac Clason, deceased, then in the hands of the executors of his last will and testament, or which might thereafter come into their hands.
 
 Second.
 
 That Lockwood had
 
 *405
 
 assigned to Stebbins, Holmes and Couch all his interest in the property so assigned on certain trusts.
 
 Third.
 
 That questions had arisen concerning the true meaning of the parties to said assignment: and,
 
 Fourth.
 
 That it had been agreed that Isaac S. Clason should receive out of the moneys then in the hands of said executors, and arising from the estate of Isaac Clason, deceased, $850, and should assign to Stebbins, Holmes and Couch, “ all his right to all moneys which now are, or may hereafter be, in the hands of the said executors, and arising or to arise from the estate, real or personal, of his said father.” The subsequent clause containing the assignment is substantially in accordance with the objects of the instrument as recited. And nothing is then found in the recitals to qualify or restrain the effect of the generality of the granting clause:
 

 The words of this assignment, it is true, are broader and more comprehensive than the words of the previous assignment to Lockwood, and were intended to be. It was made to explain and define what was intended by the former in some respects. That was so obscurely drawn and defective that the parties in interest disagreed in its construction. And although we can see that there was no ground for a doubt as to the legal construction of the assignment 'to Lockwood, and that this assignment to Stebbins, Holmes and Couch, comprehends other subjects matter of assignment than the former, we are not authorized to say that it was not intended by the parties that it should have that effect, or that the former was not less comprehensive in its legal construction than was intended by the parties. It was competent for them, bj another agreement, to restrict or enlarge its construction and legal effect. They have thought proper to exercise that right, and have used words neither doubtful nor obscure, and I think that we. cannot put a construction on them directly contrary to their plain sense.
 

 There is nothing to show that either of these assignments was obtained by fraud or undue advantage. It is no doubt true, that Isaac S. Clason was exceedingly reckless and improvident in his habits, and in many respects unworthy of the patrimony of his father; but there is nothing to show that he was not legally competent to contract.
 

 
 *406
 
 I am of opinion that the decree of the supreme court should be revised, and that of the assistant vice chancellor should be affirmed.
 

 Ordered accordingly.