BROWN v. TURNER, JR., and HOWERTON, Secretary of State.

WM. M. BROWN v. JOSIAH TURNER, JR., and W. H. HOWERTON, Secretary of State.

The Act of 1869-'70, chap. 43, repeals the Act establishing the office of Public Printer; and the Public Printer as now provided for, is not an officer within the meaning of the Constitution.

When the question of the right, or title to an office is put in issue, *mandamus* is not the form of action, the appropriate remedy being an action in the nature of a *quo warranto ;* nor will *mandamus* lie, when two persons claim the same duty adversely to each other, against a third party.

Any person having a right to an office, can in his own name, bring an action for the purpose of testing his right as against one claiming adversely.

(*Hoke* v. *Henderson*, 4 Dev. 1; *Howerton* v. *Tate*, 68 N. C. Rep. 551; *Hill* v. *Bonner*, *et al.* Busb. 257; *Cotton* v. *Ellis*, 7 Jones, 545, cited and approved.)

APPLICATION for a *mandamus*, heard before *Watts, J.,* at Chambers in the city of Raleigh, on the 20th day of January, 1874.

In his complaint, the plaintiff alleges that he has been duly appointed Public Printer by his Excellency, the Governor, and asks for a *mandamus* directed to the defendant, Howerton, the Secretary of State, commanding him to deliver the public laws, &c., to the plaintiff, and also praying that he be restrained from delivering the same to the defendant, Turner. Howerton answers the complaint, raising no question of fact or law. Turner demurs to the complaint :

1st. Because of a defect of parties plaintiff, for that the Attorney General, in the name of the people of the State, should have brought the action.

2d. Because the complaint does not state facts sufficient to constitute a cause of action, in this, that the Governor of the State has no right to appoint a Public Printer, and that the plaintiff has never been duly appointed Public Printer or contractor.

3d. That *mandamus* is not the proper remedy for the case made by the complaint.

His Honor at the hearing overruled the demurrer and gave judgment for the plaintiff; from which judgment, defendants appealed.

*Merrimon, Fuller & Ashe,* and *Attorney General Hargrove,* for appellants.

The case made by the complaint is "to try the title to an office," and *mandamus* does not lie. *Tate* v. *Howerton,* and *Mott* v. *Tate,* 66 N. C. Rep. p. 231; C. C., sections 366, *et seq.*

If it be said that the place sought is not an office, and the Governor had a right to make a *contract* with plaintiff and did so contract, then *mandamus* does not lie. Tappan on *Mandamus,* p. 78; 4 A. & E., p. 949; *Ex parte Pering.*

The plaintiff must show a clear legal title. Tappan on *Mandamus,* p. 28.

His right is defective, as he was appointed by the Governor pending the session of the Senate without their concurrence. Art. 2, sec. —, Constitution; *The people* v. *Forquer,* Breeze (Ill. Reports) p. 72.

The case of *Howerton* v. *Tate,* 68 N. C. Rep. p. 551, has no application, as the existing Senate did not pass the act originally, nor has it confirmed the selection of the present contractor.

The defendant Turner is a proper party. C. C. P., secs. 55 and 61—and the Court must pass on his rights.

The defendant Howerton has a discretion. *People* v. *Forquer,* above; Tappan on *Mandamns,* p. 13.

The employment of printing the public laws and documents does not constitute an office. An office is an agency for the State. *Clark* v. *Stanly,* 66 N. C. Rep. &c., 63; *U. S.* v. *Maurice,* Brock. C. C. 103, 113 and 114.

An employment by the State not connected with government, and not requiring any action as *agent for the State,* is not an

office. *Nichols* v. *McKee*, 68 N. C. Rep. 429; *Welker* v. *Bledsoe*, 68 N. C. Rep. 457.

There is nothing in the undertaking of the Public Printer connected with government or requiring the performance of any act as agent of the State. Battle's Revisal, ch. 97. See analogous cases: *Solomons* v. *Graham*, 15 Wall. 206; *Commonwealth* v. *Birnes*, 17 S. & R. 220: A printer of the laws of Congress is not an officer. *Ibid* pp. 237 and 238: If a printer is employed for any but mechanical purposes, his duties are official; but if a certificate of the accuracy of the publication be required, his duties are mechanical and not official—a mere contract.

The authenticity of the publication of North Carolina Statutes must be certified by the Secretary of State. See Battle's Revisal, ch. 78, sec. 15, p. 644.

If the Public Printer were an *agent* to do the State printing, the State would be liable for the obligations contracted in the performance of the work. *Cook* v. *Irwine*, 5 S. & R. 497.

U. S. laws, 2 Brightly Digest *tit.* "Printing," sec. 6, ch. 1, p. 796: A firm, it seems, may be Public Printer of Congress; perhaps a corporation.

Sections 16 and 17: Public printing of Congress and Executive Department seems to have been done by contract.

A firm or a corporation may well perform all the duties and undertakings of the Public Printer under this act.

The office of State Printer was abolished, ch. 43, Acts of 1869-'70; the duties have since been performed, ch. 3, Acts of 1870-'71, under contract. Between the dates of December, 1870, and February, 1872, there were no duties prescribed by law for the Public Printer.

The Legislature may contract in behalf of the State. Constitution, art. 5; 11 Ir. 501, *Mills* v. *Williams*; 5 Peters.

The members of the printing committee are officers, under *Clark* v. *Stanley*. They may, it seems, contract when so authorized. P. 799, sec. 21, ch. 3, *tit.* Printing, 2 Brightly

BROWN *v.* TURNER, JR., and HOWERTON, Secretary of State.

Digest U. S. laws. They are particularly authorized to contract by the Acts of 1871–'72, ch. 180.

The plaintiff has not been properly appointed; the vacancy is an original one, and there has been no confirmation by the Senate. *People* v. *Forquer*, above; *Nichols* v. *McKee*, 68 N. C. Rep. 429.

*Smith & Strong*, and *Argo* and *Batchelor*, *Edwards & Batchelor*, for the plaintiff.

Upon the complaint and demurrer arises three questions:

I. Is the position of Public Printer a public officer?

1. An officer is any one who has a duty concerning the public; the extent of his authority is not material, as it is the nature of the duty that makes him a public officer. Bac. Ab. Tit. Off. Sec. A. *Clark* v. *Stanly*, 66 N. C., 69. *People* v. *Bledsoe, et al.*, 68 N. C., 459. *People* v. *McKee, Ibid* 429.

(*a.*) The duty must concern the public. *Ibid.*

(*b.*) If prescribed by governmental authority, as by an act of the Legislature, it constitutes the position to which the duty is incident, an office. *United States* v. *Maurice, et al.*, 2nd Brockenbrough, 96, 103.

The duties of the Public Printer are prescribed by an act. Bat. Rev. ch. 97.

(*c.*) A bond is another incident of an office. *U. S.* v. *Maurice*, 2nd Brock. 96.

(*d.*) Likewise continuance. *Ibid.*

(*e.*) The importance of the position, and of the duties incident thereto, to a complete and just administration of government, and to the public weal, the degree of necessity to the public, gives character to it in proportion as it is less or greater. The material interests of the public would not suffer, if the grass in the Capitol Square were not mowed or the shrubbery not trimmed, no fundamental principle of organized society would be violated, and none of the general purposes of goveanment thwarted.

The *law of the land* would be violated if the laws were not

in due time published.    Dec. Rights, sec's 17 and 32.    *Hoke*
v. *Henderson*, 4 Devereux 1.

It is also made incumbent on the Legislature to publish the
journal of its proceedings.    Art. 11, sec. 18.

2. The striking out of the act the words "*office of Public
Printer*," and leaving merely "Public Printer," does not
affect the character of the position so long as the duties remain
the same.    *People* v. *McKee, et al.*, 68 N. C. 429.

3. The Public Printer is invested by the act with the dis-
cretion and power of an *agent*; he may do the printing or cause
it to be done, and he shall "cause" the binding to be done.
Bat. Rev. ch. 97, sec's 5, 12, 19 and 20.    This constitutes him.
an officer.    *People* v. *Bledsoe*, 68, N. C. 459.

II. If an officer, was plaintiffs appointment legally made ?·

(1.) The previous action of the Legislature obviated the ne-·
cessity of nominating to the Senate.    *Howerton* v. *Tate*, 66 N..
C. 231.

(2.) There was a vacancy.    Turner appointed 18th Decem-·
ber, should have been appointed 2nd day after meeting Legisla-
ture.    Rev. Code, chap. 93, sec. 1.    Printer has been for 3
years chosen by Legislature, and therefore there had been no
Printer.

(3.) There was vacancy : the constitutional provision, as in-
terpreted by the Supreme Court, includes *original* vacancies..
*People* v. *McKee*, 68 N. C. 493.

III. Will *mandamus* lie in this case ?

1. The party to whom the *mandamus* must issue, if issued
at all, according to the prayer in the complaint, is the Secre-
tary of State.    It would be self-contradictory for the plaintiff·
to ask that the defendant Turner be commanded to perform.
an official act, and at the same time allege that he himself is·
the incumbent of the position to which the required act is in-·
cident.    There is no controversy between the plaintiff and the·
defendant, as regards the title to the office of Public Printer ;
the title comes only incidentally in question, as it does in every
case where a *mandamus* is prayed; for before the writ can

issue the prosecutor or applicant, now the plaintiff, must show a *legal right* to demand the performance of the act from the party against whom the writ is prayed. Tappan on *Mandamus* 10–12; *State* v. *Jones*, 1 Ired. 129; *State* v. *Justices of Moore*, 2 Ired. 430.

The defendant Turner is made party for the purposes of injunction only; and though the effect of a *mandamus* to the Secretary of State would be indirectly to pass upon the defendant Turner's right to the office, it does not invalidate the proceeding. *Tap. Man.*, 19; *Richards* v. *Dyke*, 3. A. and D. Q. B. N. S. 267. per. Patterson, J. We want "books and papers only," *People* v. *Dikeman* 7 How. N. Y. P. R. 124, (128.)

It is competent for a *mandamus* to issue to an executive officer to compel him to perform a merely *ministerial* act, one concerning which he has no discretion. *Cotton* v. *Ellis*,7 *Jones*, 345; *Malpass* v. *The Governor of N. C.*, at this Term.

2. In any view of the case it seems *mandamus* will lie. Though not the proper remedy to try the title to an office where the controversy is directly between the claimant and an *incumbent* where right is doubtful, yet where the appointment or election of the *incumbent* is merely colorable, and *a fortiori* where it is clearly void, *mandamus* is the proper remedy, Tap. *Man.* 27–231, *People* v. *Dikeman*, 7 How. N Y. Practice, R. 124 (128.) *Ibid* 129.

The defendant, Turner, is not even a *de facto* officer. *Burke* v. *Elliot*, 4th Ired , 355 (361,) *State* v. *Briggs*, 3d Ired., 357, 357. *Quo warranto* is, therefore, not proper remedy, for it proceeds upon the allegation that there is a "usurpation," or "intrusion into," or possession of an office, and an *exclusion* by the incumbent of the claimant, Bat. Rev. chap. 17, sec. 366, sub. div. 1.

3. In this case there is no other *adequate legal remedy*. The plaintiff could not bring detinue to obtain the papers, for though he recover them in such action he would get no pay for printing. *People* v. *Steele*, 2 Bar. N. Y. Supreme Court R.

397 (418); he could not bring trover for there is no con-
version nor would he get pay. He could not bring action
in nature of *quo warranto* against defendant Turner, for, by
the Attorney General's refusal to allow the State to be made
party plaintiff, he is excluded from this remedy, it being dis-
cretional with the Attorney General whether he will allow
such action to be brought, and so plaintiff would be left reme-
diless. *People ex rel. Peabody* v. *Attorney General*, 22 Bar S. C.
Reports 114. And Turner has never been inducted, not
having taken oath prescribed in Art. 6, sec. 4 of Constitution.
*Burke* v. *Elliott*, 4th Ired. 355 (361,) nor has he color of title,
*ibid.*

It would seem, therefore, that in behalf of justice and good
government, the proceeding for a *mandamus* will lie. *People*
v. *State*, Bar. S. C. R. 397, (418–419.)

BYNUM, J. To enable the plaintiff to recover, he must main-
tain three propositions:

.1. That what he claims, is a public office.

2. That he has the legal title to it.

3. That he is prosecuting his claim by the right form of
action.

1. Is it an office?

Ch. 43, Acts of 1869–'70, enacts "That the office of State
Printer be and the same is hereby abolished, and all laws and
parts of laws in conflict with this act are hereby repealed."

Ch. 180, Acts of 1871–'72, enacts "That the Joint Com-
mittee on Printing of the two Houses of the General Assem-
bly" are directed and instructed to make, execute and deliver
a contract for the public printing, on the part of the State," at
the rates specified in this act.

There is an act positively abolishing the office of Public
Printer, *eo nomine*, which, according to *Hoke* v. *Henderson*, 4
Dev. 1. is constitutional in form and substance, because it dis-
turbs no vested right or term of an incumbent. But it is
urged that this construction of the act abolishing the office,

left the State without the power of printing and publishing the laws. Be it so. The mischief is the act of the Legislature, and cannot operate as a grant of power to the Executive, to *create* an office, as a remedy for legislative indiscretion. But that body did, by the act of 1871–'72, undertake to repair the mischief done in abolishing the office, by making it the duty of a "joint committee" to contract for the public printing. To this, it is replied, that the Legislature had no power to make "contracts" because that, is an executive function. Admit that, and that their contracts are void for the infringement, still it leaves the office abolished, and the argument is not advanced. But is it true, that the making of a contract is an exclusive executive function? That will depend upon what are exclusive executive powers. To say that because a thing is a contract, it is an executive duty, is begging the very question in dispute.

There is no magic in the word "contract" which appropriates it solely to executive uses. Where, in the Constitution, is the prohibition upon the Legislature, to make a contract? We know that it both has, and does exercise, the right of making contracts, indeed, all laws in one sense are contracts, express or implied, and derive their highest sanction from the faith we repose in them as such, and there is nothing in the nature of things which forbids the Legislature to become a contracting party.

But it is said that an office cannot be abolished by indirection, leaving all its duties to be performed by a person called a "contractor" of public printing.

As was said of the word "contract," we say that that there is no magic in the word "office." When the Legislature created and called it an office, it was an office, not because the peculiar duties of the place constituted it such, but because the creative will of the law-making power impressed that stamp upon it; therefore, when that stamp was effaced by the repealing act of 1869–'70, it shrank to the level of an undefined duty. The authority that invested these duties with the name

and dignity of a public office, afterwards divested them of that name and dignity.

There being now no law of the land declaring it to be a public office, our next enquiry is, do the duties of the Public Printer constitute it an office?

The place is really *sui generis*, and therefore the ordinary *criteria* by which we distinguish and classify public offices can not aid us to a conclusion here. It occupies that neutral ground where it may "shade into" a legislative or executive function, without disturbing the harmony of either. It comes within the definition of a public office because its duties relate to the public and are prescribed by public law, but so may the duties of a contractor or workman upon a public building. It seems not to be an office, because all the duties of Public Printer, as prescribed by law, are mechanical only, as much so as those of a carpenter or brick-mason, calling for neither judgment or discretion, in a legal sense, and which may be performed by employees, men, women or children, in or out of the State, and on his death every unfinished duty of the printer can and must be, under existing law, completed by his personal representative. If it is an office, there is no law prescribing the term or duration of it, and it may be held for life as well as a term of years, which puts it out of harmony with the whole genius and spirit of our political institutions, a conclusion which can be forced upon us, only on the most evident necessity.

Assuming, as most favorable to the plaintiff, that this anomolous collection of duties has vibrated upon the dividing line between two departments, a closer view will show that it has finally assumed a state of rest, upon the legislative side of the line. The office of State Printer, as such, was abolished in 1870. From that time to this, each political party, when it gained the ascendancy in the Legislature, claimed and exercised the exclusive control over the public printing by their own election of, or contract with, the printer. In 1873, the question was raised in a direct proceeding for that purpose, before Judge

Moore, and it was then decided by him, in a well considered opinion, to be not an office, and that judgment was acquiesced in by the contestant and all the branches of the government. It would seem, then, that this action and acquiescence of all the departments of the government had fixed the true position of this place, in a manner not to be shaken. There is nothing in the nature of the duties to be performed to excite the jealousy of the other departments, or to disturb the equilibrium of either one of the three co-ordinate divisions of the supreme authority of the State. / While it is true that " the executive, legislative and supreme judicial powers of the government ought to be forever separate and distinct," it is also true that the science of government is a practical one; therefore, while each should firmly maintain the essential powers belonging to it, it cannot be forgotten that the three co-ordinate parts constitute one brotherhood, whose common trust requires a mutual toleration of the occupancy of what seems to be a " common because of vicinage," bordering the domains of each.

It would seem as natural for the department which enacts the laws to control the publication of its labor, as for an author to secure the copyright of his work, and to control its publication. Printing and publishing are necessary part of the enactment of laws so essential that laws would be incomplete and valueless without being thus made known to those who are bound to observe them.

We are not, therefore, disposed to go into a more curious and critical enquiry upon this question, where no great principle is involved and where such enquiries are more calculated to confuse than to answer any useful purpose. We hold that the Legislature has the right to let out the public printing by contract.

2. If this be an office, the next question would be, whether the plaintiff's title can be valid without confirmation by the Senate, or whether it falls within the decision in *Howerton* v. *Tate*, 68 N. C. Rep., 551, from which it seems distinguishable.

As we are of opinion however, that it is not an office, we will not pursue the enquiry, but pass to the next question.

3. Is the plaintiff prosecuting his claim by the right form of action? *Mandamus* is a proceeding to compel a defendant to perform a duty which is owing to the plaintiff, and can be maintained only on the ground that the relation has a present, clear legal right to the thing claimed, and that it is the duty of the defendant to render it to him. If it appears from the complaint that two persons are claiming the same duty *adversely to each other*, against a *third* party, the writ does not lie. Tom. L. D., tit. *Mandamus*, 3 Bun. 1452, and that for the plain reason that the *title* must be decided between them before the defendant can know to whom the duty or thing is due.

The plaintiff here alleges that the defendant, Turner, on the 18th December, 1873, entered into a contract with a joint committee of the two Houses to do the public printing, and gave bond to the State for the performance of the duties according to law, and claimed the right to do the printing. That he, the plaintiff, afterwards, to wit, on the 20th of the same month, was appointed Public Printer by the Governor of the State, gave the bond, took the oath of office, and claimed the same duty as Turner, from the defendant, Howerton, the Secretary of State.

If the case rested upon this statement of the plaintiff himself, it would be conclusive against him. But Howerton in his answer, states, that when this demand was made upon him, by the plaintiff, being unable to tell which of the claimants had the better title, he applied to his constitutional adviser, the Attorney General of the State, to instruct him in his duties, and that he gave as his opinion, that Turner had the better right and was entitled to the printing matter. In refusing the plaintiff, the Secretary of State was fully justified, for to have complied would have been a flagrant violation of the duty of his office, in failing to protect the property of the State. The law is not so unfaithful to itself, as to allow its agents to sur-

render its rights to doubtful claimants. A judgment in *man-damus*, does not decide the title, for if the plaintiff obtained judgment against Howerton, it would not estop Turner from bringing his action against the plaintiff, Brown.

The right sought to be tried, is not one between Brown and Howerton, but between Turner and Brown, yet the *mandamus* is against Howerton, a third party, who has no interest in the controversy, except to know who is the rightful claimant, until which time no duty arises on his part, and no action lies against him. We have labored diligently, and failed to find, a single case in the books, where one of two persons claiming the same office adversely to each other, can by *mandamus*, call upon a third party, to render a duty which is owing by him to the rightful one only of the two.

The question of *title* is put directly in issue, and when that is the case, *mandamus* is not the form of action, but the appropriate remedy is an action in the nature of *quo warranto*, not against Howerton but against Turner. *People* v. *Olds*, 3 Cal. 167; 2 Term R. 289 ; 3 John Ca. 379. It is true that the latter action cannot be maintained, unless there is an intrusion and user of the office, by the defendant, and it is here alleged that Turner had not filled or used the office, and therefore the plaintiff was without remedy, unless by *mandamus*. But the authorities establish, that entering into a contract and giving bond, or taking an oath of office, are acts which constitute such a user or intrusion, as will support the action, in the nature of *quo warranto*. Steph. Nisi Prius 2441 ; *Rex* v. *Tate*, 4 East. 337; *Hill* v. *Bonner, et al.*, Busb. 257 ; Mos. on Mandamus.

But suppose Turner was out of the way, and the undisputed title of the office was in the plaintiff, is he entitled to the relief he asks, upon the pleading ? No stress is laid upon the fact, that the action is not on the relation of the Attorney General, for we are of opinion that under the liberal provisions of the C. C. P. any party having a right, can sue in his own name, in all cases except when otherwise expressly provided. In

modern practice, *mandamus* is not a prerogative writ, but an ordinary process in cases to which it is applicable, and every one is entitled to it where it is the appropriate process for asserting the right claimed. *Kentucky* v. *Dennison*, per TANEY C. J. 24 How. 66. 12 Pet. 615. C. C. P. 381, 362.

Assuming, then, that the plaintiff can sue in his own name, especially under the circumstances of this case, the principle to be extracted from the case, as applicable to public officers, is this: *Mandamus* will lie where the act required to be done is imposed by law, is merely *ministerial*, the relator has a clear right and is without any other adequate remedy. Mos. on *Mandamus*, 68. But it does not lie where *judgment* and *discretion* are to be exercised, nor to control the officer in the manner of conducting the general duties of his office. 2 Dillon on Corporations, S. 665; 34 Pa. Rep. 496. In *Decatur* v. *Spaulding*, 14 Pet. 497, it was held that *mandamus* would not lie against the Secretary, because the duty required by the writ was executive, in which judgment and discretion had to be used, to-wit; in construing and passing upon an act of Congress. To the same effect is *Brashear* v. *Mason*, 6 How. 92; *U. S.* v. *Guthrie*, 17 How. 284, where the Court says, " It has been ruled that the only acts to which the power of the Courts, by *mandamus*, extends, are such as are purely ministerial as to which nothing like judgment or discretion, in the performance of the duties, is left to the officer." So when an office is, filled by a person who is in by color of right, as we have shown by authority Turner to be, for the purposes of testing the title, a *mandamus* is never used, but a proper remedy is *quo warranto*. 20 Bach. 302; 7 Ga. 473; 2 Dun. and East. 259. The case of the *United States* v. *Seaman*, 17 How. 225, is an instructive one in point, and was this: There was a printer to the Senate and a printer to the House of Representatives of the United States, and a Superintendent of Printing to both Houses, whose duty it was to receive and hand out all the printing, according to an act of Congress, which provided that when a document was ordered by both Houses to be

printed, the entire printing of such document should be done by the printer of that House which first ordered it. On the 31st of January, 1854, the Commissioner of Patents sent in to the Senate that portion of his report relating to arts and manufactures, which the *Senate*, on the same day, ordered to be printed. On the 20th of March following, the Commissioner sent to both Houses the agricultural portion of his report, which the *House* first ordered to be printed. The printer to the Senate claimed that both reports constituted but one document, and that by virtue of the Senate order of 31st of January,, he was entitled to the printing of the agricultural part, although it was first ordered to be printed by the House. The Superintendent refused to deliver it to the Senate printer, and *mandamus* was applied for to compel him. The Supreme Court held that *mandamus* would not lie, on the ground that the duty of the Superintendent required the exercise of judgment as to ascertain facts and draw conclusions. In delivering judgment, Chief Justice Taney says : " The rule is well settled that *mandamus* cannot issue in a case where discretion and judgment are to be exercised by the officer, and it can be granted only where the act required to be done is merely ministerial and the relator without any other adequate remedy. * * * Nor is there any reason of public policy or individual right why this remedy should be extended beyond its legitimate bounds to embrace cases of this description, for it would embarrass the operations of the executive and legislative departments of governments if the Courts were authorized to interfere by this summary process in controversies between officers in their respective employments, whenever differences of opinion as to their respective rights may arise." *Marbrey* v. *Madison*, 1 Cranch. 64; *Kendall* v. *U. S*, 12 Pet. 834 ; 2 Cowen 444; *Ruside* v. *Walker*, 11 How. 272 ; *Cotton* v. *Ellis*, 7 Jon. 545.

Here Howerton was called upon to decide a grave constitutional question, in favor of one who claimed in the face of an act of the Legislature, the decision of a Judge, the deliberate

opinion of the Attorney General, and the uniform practice of all the departments of the government up to that time. To say that *mandamus* will lie in such a case is wholly inadmissible.

Judment reversed, demurrer allowed and case dismissed.

PER CURIAM.                    Judgment reversed.

RODMAN, J. I concur in so much of the opinion of Justice BYNUM, as hold that there is no such office as that of State Printer, and consequently that the plaintiff is not such an officer. With this opinion, I did not conceive that the question of the appropriateness of the remedy, was material and I have not considered it.

SETTLE, J. (*Dissenting.*) I do not propose to discuss the questions presented for decision ; but I merely wish to state that I do not concur in the opinion of the majority of the Court, believing, as I do, that *Clark* v. *Stanley*, 66 N. C. 59 ; *People* v. *McKee*, 68 N. C. 429 ; *People* v. *Johnston*, Id. 471 ; *People* v. *Bledsoe*, Id. 459 ; *People* v. *McGowan*, Id. 520, and *Howerton* v. *Tate*, Id. 546, were well decided, and applying the principles upon which those cases are made, to stand to the case before us, I am forced to the conclusion that the Public Printer is an officer of the State, and that consequently the Legislature cannot either directly or indirectly appoint a person to discharge the duties of that office.

It is true that the Legislature have professed to abolish *the office* of Public Printer, just as they professed to abolish the offices of the Boards of Directors for the Asylum, &c., but they have left all the important duties heretofore performed by the Public Printer, *an officer*, to be performed by the Public Printer, a *contractor*.

Can it be, that such a play upon a word, can change the essence, the substance of a thing ? It may be found that this Court has gone too far, in the cases referred to. I do not think

so; but certainly the opinion of the majority of the Court, in this case, cuts us loose from our moorings and puts us at sea again.

READE, J., (*dissenting.*) I do not concur in the decision of the Court. It significantly ignores the recent cases of *Stanley* v. *Clark, People* v. *Bledsoe, People* v. *McKee, People* v. *Johnston, &c.,* which were supposed to have settled the vexed question as to what are offices in North Carolina, and who was the appointing power and puts everything at sea. There is no more important business than that of printing and publishing the laws, and the reports of officers and institutions. It is expressly required by the Constitution. It is prescribed in detail by several acts of the Legislature, prior to our present Constitution, and it was also prescribed by law. The Public Printer was elected by the Legislature, with a provision for the Governor to fill vacancies. It is conceded that it was then an office, and that it continued to be an office, both under the old Constitution and under the new until 1869–'70, when the Legislature passed an act abolishing the office, and the decision is put upon the ground that the Legislature did then abolish the office, and that it had the power to do so, and that since that act, it has not been an office, but a mere ministerial business, which may be done under contract by any one with whom the Legislature may contract, and by his administration, if he die. I admit that the Legislature did abolish the office as said; and for the sake of the argument, I admit that it had the power to do so, but it is overlooked that what the Legislature abolished in February, 1870 (probably to get clear of an objectionable incumbent) it re-established in the next month, March, 1870, so that we have this case; an office exists on Monday; is abolished on Tuesday, and is set up again on Wednesday. What is it on Thursday? An undefined duty, "mechanical," says the decision. *An office,* says I. What practical effect is the abolishing act? It was thought to be of no effect, and therefore, is not brought forward in Battle's Revisal. It was admitted

by the Legislature that the office was set up again by the act of March, 1870, because, in the next year, 1870–'71, they passed another act abolishing it again, which would have been a vain thing if there had been nothing to abolish. But the abolishing act-of 1870–'71 is also omitted in Battle's Revisal, and why? Because the office was re-established by several acts which are brought forth in Battle's Revisal, *tit.* Public Printing, and the duties of Public Printer, as now prescribed by-law, are substantially the same as they were before the present Constitution, and as they may be found in the Revised Code, *tit.* Public Printing. If it was an office then, why is it not an office now? In the cases cited above, the Legislature abolished the officers of the Board of Directors for the Institutions, and created another Board, the "Board of Trustees," but the powers and duties of the Board were left as before, and therefore, it was decided, that the abolition amounted to nothing, that the office continued, or if abolished, was set up again, but now the decision is that the Legislature may kill, but cannot make alive.

I have said that since the act abolishing the office, it has been created again, and exists now with almost precisely the same duties and powers, as for a great many years. Compare Battle's Revisal, *tit.* Public Printer, with Revised Code, same title. The two principal alterations are that the public binding is not added to the printing, and the power to fill vacancies is not given to the Governor, so that now, if the Governor has neither the power to appoint to the office, nor to fill a vacancy, we have this case. The Public Printer is elected in January and dies in February, the office is vacant until an administrator qualifies the whole year. Then the office is vacant for the whole year, and no public printing can be done by anybody, although the Constitution requires that it shall be done, and although it is more important to print and publish the laws than to make them; certainly such ought not to be the law.