Civil action to obtain a mandamus, heard by consent.
The action is instituted by the Burke County Road Commission, established by Public-Local Laws of 1921, ch. 64, to compel the defendant board to turn over to them the proceeds of certain bonds for road purposes alleged to belong to plaintiff commission under and by virtue *Page 465 
of said statute and other acts appertaining to the subject. There was denial of liability or obligation on part of defendants. Jury trial being waived, cause was heard by the court, and judgment entered that a peremptory writ issue commanding defendant board to turn over to plaintiff $25,000, the proceeds of certain bonds which had been sold by defendant and illegally diverted and applied to other purposes of the county. Defendant excepted and appealed.
It appears that plaintiff board was constituted by Public-Local Laws of 1921, ch. 64, and given exclusive control of the laying off, establishing, building, altering, and repairing and maintaining all of the public roads of Burke County, and of the purchase of all the necessary equipment and material therefor. And in section 12 of the act it is provided in general terms that all road moneys for the designated purposes arising by taxation or sale of road bonds, etc., shall be turned over and belong to them by virtue of their office, etc.
It further appears that the fund, or a portion of it, the subject-matter of this controversy, arose from the sale of $65,000 road bonds of said county by the defendant board, and the proceeds of which and the disposition of same are affected and controlled by Public-Local Laws of 1921, ch. 213; Public-Local Laws, Extra Session, 1920, ch. 116, and Public-Local Laws of 1919, ch. 368. Under the last statute the commissioners of Burke County were authorized to issue and sell $80,000 of coupon bonds, payable at specified time and rate of interest, and in section 2 of the act it is provided that the proceeds of said bonds, when sold, shall be applied exclusively to the completion of the State highway through Burke County, including the bridges thereon, and to the purchase of a site and the erection thereon for a new home for the aged and infirm; and further, to the building of bridges and construction and repair of roads in certain remote townships of the county, this last purpose, however, being on conditions which do not seem to have been compiled with, and the facts concerning them, therefore, in no way affect the issues in the present case. Under this statute $40,000 of the proposed issue were shortly thereafter sold, and the proceeds have been disbursed by commissioners without exception noted.
In Public-Local Laws, Extra Session, 1920, ch. 116, after reciting that the costs of the State highway in Burke County had been more than was estimated, and that there were no funds available to pay the county quota for such expenditure, it is provided that the board of commissioners of Burke County shall sell an additional $25,000 of road bonds *Page 466 
of specified date and interest rate, and in section 2 of the statute the proceeds from this $25,000 bond sale are directed to be applied as follows:
"That the proceeds of said bonds, when sold, shall be applied by said commissioners exclusively to the completion of the State highway through Burke County, including the bridges on said highway, and to the completion of the links of road beginning at a point on said State highway at Jones Berry's residence and running through the town of Rutherford College to the Johnson Bridge on the Catawba River, and the link of road from the town of Drexel to the said Catawba River, Huffman Bridge, and the balance of the funds as may remain of said $25,000 to be used to complete the Shelby road in Lower Fork Township of Burke County leading to the Three County Corner."
And Public-Local Laws of 1921, ch. 213, after reciting that $40,000 of the bonds as provided by the act of 1919 were still unissued, and that there was also the additional issue of $25,000 authorized by Public-Local Laws of 1920, ch. 116, and that these two bond issues, to mature at different times and bearing different rates of interest, were not unlikely to produce "confusion and complications," provides that the two statutes be consolidated and amended to read as follows: That the defendant board could issue $65,000 of road bonds, maturing at specified time, and to bear interest at a rate not to exceed 6 per cent, and directs that the proceeds of this $65,000 issue be applied as follows:
"That the proceeds of sale of said bonds, when issued, shall be applied exclusively to the payment of the debts now due the First National Bank of Hickory and the First National Bank of Morganton, which said debts were incurred in carrying out the provisions of said acts, and especially the completion of the State highway, and to the purposes mentioned and required in said chapter three hundred and sixty-eight, Public-Local Laws one thousand nine hundred and nineteen, and chapter one hundred and sixteen, Public-Local Laws one thousand nine hundred and twenty, Extra Session, as aforesaid, and to no other."
Under these various statutes the county commissioners of Burke had the power of sale of these bonds and the disposition of the proceeds until the enactment of chapter 64, creating plaintiff board, but while they had such power they could only apply the fund to the purposes designated in the statutes applicable and to none other. In the $40,000 issued under Public-Local Laws 1919, ch. 368, these purposes were "the completion of the State highway through Burke County, and the Purchase of a site and erection of a new home for the aged and infirm." And under chapter 116, supra, Extra Session 1920, the purposes were "to the completion of the State highway through Burke County, including the bridges thereon, to the completion of two specified links therein, *Page 467 
and the remainder to the completion of the Shelby road in Lower Fork Township leading to the Three County Corner." "Exclusively to these purposes" being the language used in both statutes. And if defendant, prior to the constitution of plaintiff board, has paid out these funds for the purposes designated and none other, such payments will be upheld and defendants protected therein; but if, and to the extent that defendants have diverted these proceeds to general county or other purposes, such payments are without warrant of law, and same must be restored to the proper fund as provided and designated by the statutes under which same were raised. That is, the $40,000 being to complete highways and bridges, and to the procurement of a site and county home; and the $25,000 to the State highway through Burke County, including bridges, the two specified links thereof, and the remainder, if any, to the Shelby road. And we are of opinion that the subsequent act, chapter 213, supra, Laws 1921, by which the two former statutes were consolidated and amended did not have the effect of approving the payment out of these funds to the banks of Hickory and Morganton, regardless of the purposes for which such debts were contracted, but these payments were only authorized and approved to the extent that the money borrowed was used for the purposes as directed by the statutes, that is, to the extent that they were used for the designated purposes, they shall be recognized as valid vouchers in the distribution of these funds, and not otherwise.
Under these rulings, if the county commissioners have diverted these funds and used them for general county or other purposes, the plaintiffs are entitled to have same restored to the fund from which they have been improperly taken, and turned over to them to be used as the law directs.
And, as now advised, we think that remedy by mandamus is open to plaintiff. As said in Brown v. Turner, 70 N.C. 93, quoted with approval in Board of Education v. Comrs., 150 N.C. at p. 123: "Mandamus will lie when an act merely ministerial is imposed by law, the relator shows a clear right and is without other adequate remedy." See Drainage District v.Comrs., 174 N.C. 738. Applying the principle, we have recently approved such a proceeding to compel a defendant to turn over to the proper officials county funds admittedly on hand and withheld without lawful justification. Tyrrell v. Holloway, 182 N.C. 64. And well considered authorities are to the effect that it is not always essential to the maintenance of this remedy that it should be made to appear that the fund is still on hand, a principle particularly applicable where there has been a wrongful diversion of funds from one municipal purpose to another, and the question is more likely to be one of mere bookkeeping than the assertion of really antagonistic rights. State ex rel Collector v. Dishaw,42 N. J., 141; People ex rel Dannat v. *Page 468 Comptroller, 77 N.Y. 45; People ex rel Dowing v. Stout, 23 N.Y. 338;Lansing v. Van Gorder, 24 Mich. 456; County Comrs. Pike Co. v. The State, 11, Ill., 203.
While we are of opinion, and so hold, that plaintiff is entitled to have restored to their proper place and turned over to them all of these moneys that have been wrongfully expended contrary to the provisions of the statute, except for an amount reasonably required and intended for a site and new county home, an exception, however, that only applies to the disbursement of the $40,000 bond issue referred to and controlled by Laws of 1919, ch. 368, as recognized and approved by Laws of 1920, ch. 213, we do not think that a peremptory mandamus is justified in the present condition of the record for the reason that there are no facts in evidence that will enable a court to determine whether or to what extent this fund, or any of it, has been misapplied. True, the defendant avers under oath that it has all been expended under proper statutory authority, but in what purports to be an itemized statement, the great bulk of these expenditures is for money repaid to banks, but whether raised from sale of these bonds or borrowed in anticipation of their sale does not appear. And this verified account only shows an expenditure of $64,803.06.
While the defendants thus fail to support their averment, we do not discover any evidence to justify the finding of fact that at least $25,000 is available for application to these road projects, nor, as stated, to enable the court to determine what amount the defendants withhold or have wrongfully misapplied. We must hold, therefore, that the judgment for a peremptory mandamus, together with the finding that $25,000 is now available to be applied to these projects, be and the same is hereby set aside, and the cause is remanded to the end that it shall be ascertained and determined how the defendant had disposed of this $65,000 bond issue, and whether any and what part of same has been expended contrary to the provisions of the statutes affecting the question. And upon such findings that a peremptory or alternative writ of mandamus issue as the facts may then appear.
 Judgment set aside, and cause remanded for further proceedings. *Page 469