STATE OF NORTH CAROLINA *ex rel.* WM. H. HOWERTON *et al. v.* S. McD. TATE *et al.*

The Legislature cannot authorize the presiding officers of its two branches to appoint proxies and directors in behalf of the State in corporations in which the State has an interest; nor can the Legislature itself make such appointments, for the reason that it would be an usurpation of executive power.

The Legislature by the Acts of 13th February, 1871, and 6th of April, 1871, having assumed to take the appointment of Directors for the State of the Western North Carolina Railroad from the Governor, it thereby dispensed with the necessity of his sending nominations to those offices to the Senate and left the Governor to pursue the law as far as he could.

CIVIL ACTION to recover the offices of directors on the part of the State in the Western North Carolina Railroad Company, (Eastern Division,) commenced in ROWAN Superior Court, and at Fall Term, 1872, a trial by jury having been waived by consent of both parties, the case was by agreement let for trial before his Honor, John M. Cloud, Judge of 8th Judicial District, on the — day of January,

1873, in the City of Raleigh. The case was accordingly tried at the time and place agreed on.

The said Western North Carolina Railroad Company is a corporation duly created by Act of the General Assembly, ratified the 15th day of February, 1855.

The charter provides for eight directors on the part of the State and four on the part of private stockholders; and that those on the part of the State shall be appointed by the Governor, by and with the advice and consent of the Council of State, and the four on the part of the private stockholders shall be elected by them.

It also provides that the Board of Directors shall have power to fill vacancies in the Board. The defendants who claimed to be directors for and on behalf of the State, hold and claim their positions by virtue of the act of the Legislature, ratified the 13th day of February, 1871, and also of the act of 6th April, 1871, under which they took possession of the Road, property and effects of said corporation.

The relators were appointed by the Governor by and with the advice of the Council of State, Directors for the State in said corporation for the year beginning on the second Thursday in October, 1871. The said Directors met in Marion, in McDowell county, on the second Thursday in October, 1871, the time and place for the regular annual meeting of the stockholders; and a majority of the stock of private stockholders not being represented, the President of the Board, which had been illegally displaced, called a meeting of the stockholders in conformity with the by-laws of the corporation, to assemble in Statesville on the 26th of October, 1871, within twenty days from said second Thursday. A majority of the stock of private stockholders not being then represented, the said directors who had been appointed by the Governor organized as a Board. The relator William H. Howerton was duly elected President of the Board, and afterwards the Board appointed four other direc-

tors to fill the vacancies caused by the failure of the private stockholders to elect.

A demand was made by the relator Wm. H. Howerton of the defendants for the surrender of the Road, property and effects of the corporation. The demand was refused and the relators, by leave of the Attorney General, brought this action in the name of the State. The opinion of the Court contains a full statement of the facts of the case. His Honor gave judgment for the plaintiff, and that the relators were entitled to offices and that they be admitted to the same, and the defendants ousted therefrom. Defendants appealed.

*A. S. Merrimon* and *D. Coleman,* for appellants.
*Bailey,* contra.

SETTLE, J. In deciding the points presented in this record we have only to apply the principles enunciated in *Clark* v. *Stanley,* 66 N. C. Rep, 59 and the *People* v. *Bledsoe* and the *People* v. *McKee,* at this term.

We shall endeavor to do so in as few words as possible, and for the sake of convenience we will designate the boards of directors contending for the management of this road by the names of their respective presidents.

*Clark* v. *Stanly* decides that the Legislature cannot authorize the presiding officers of its two branches to appoint proxies and directors in all corporations in which the State has an interest.

We argue from this that they could not authorize a committee of their body to do so, and the prohibition is equally strong upon the whole number of members, and all for the same reason ; it would be an usurpation of executive power. The Legislature itself, like the other departments of the government under our new Constitution, exists by a grant of

power from the people, and it cannot exceed that grant, either directly or indirectly.

The Tate board, who are the defendants in this action, and now in possession of the road, claim power and authority to hold the same under an act of the General Assembly, ratified the 13th day of February, 1871.

It will be observed that this act does not profess in terms to remove the Mott board, which is admitted then to have been in lawful possession of the road, but after providing for a meeting of the stockholders at Salisbury, declares that if a quorum of such stockholders and the State's proxy representing the stock of the State in said company shall be present at such meeting, it shall be competent for the stockholders of the said company for cause satisfactory to them, to remove the present board of directors, &c. The Legislature did not directly remove the directors appointed by the Governor, but it made a very forcible suggestion to the stockholders to do so, and the act goes on to say that in the event the present board of directors shall be removed, then F. N. Lucky and others (naming the eight persons who claim to be the State directors in the Tate board) shall be directors, &c., and that C. A. Henderson shall be proxy for the State.

It seems that the Legislature doubted their power to remove directors, or at least those appointed by the stockholders, and hence they suggest to the stockholders to clear the board, not only of the four directors appointed by themselves, but also of the eight appointed by the Governor; and they say to the stockholders in advance, as soon as you so clear the board here are eight persons whom we appoint to act with you as directors on the part of the State and another to act as State's proxy.

The second section of this act throws some light upon the subject; taken in connection with the decision in *Clark* v. *Stanly*, it is as follows: "That hereafter the Speaker of

the House of Representatives shall by a proper writing to that effect, appoint the directors and proxy to represent the stock and interest of the State in said company." Admit for the sake of the argument that directors in a railroad are not officers in the strict meaning of that term, but only officers in a corporation in which the State has a large interest, still the reason of the rule in *Clark* v. *Stanly* applies, and destroys the foundation upon which the defendants have built.

The conclusion is that the eight State directors and the State's proxy thus appointed contrary to law by participating in the meeting of the stockholders at Salisbury, vitiated the proceeding of that meeting:

The persons composing the Howerton board claim that they are entitled to the possession of the road; eight of them by virtue of the appointment and commission of the Governor who made the same by and with the advice and consent of the council of State and four of them by virtue of the appointment of the board of directors, as will be seen hereafter.

The original charter ratified the 15th day of February, 1855, enacts, sec. 9: " That upon the subscription of six hundred thousand dollars as herein provided by the Treasurer under direction of the Board of Internal Improvement, the State shall appoint eight directors in said company, who shall be appointed by the Governor by and with the advice and consent of the council of State."

The State directors have always been appointed in pursuance of this provision until 1869, when the stockholders under the authority of an act ratified 29th day of January, 1869, acts 1868–'69, ch. 20, elected twelve, the whole number.

The old mode however, was returned by the Act of 1869–'70, ch. 112, and the validity of this Act was recognized by the stockholders in their annual meeting at Morganton on

the 13th day of October, 1870 ; for they held said meeting under its provisions, and in accordance with its requirements.

The provision of the original charter then, in respect to the manner of appointing directors being restored by this act is still law, except as it may have been modified by the Constitution, for all acts subsequent to the act of 1869–'70, chap. 112, which profess to take these appointments from the Governor, we have seen are unconstitutional. But it is contended that since the Constitution, art. 3, sec. 10, requires the Governor in making such appointments to consult the Senate, and as he failed to do so, the Howerton Board has no valid claim to the road.

The question is, should the Governor have sent nominations to the Senate after the General Assembly had in express terms taken the power of appointment from him and exercised it themselves in one instance, and by the presiding officers of the two branches in another instance ?

It would have been a mockery to have done so, for they had already said by their action you have nothing to do with the matter. This action on the part of the Legislature dispensed with the necessity of sending in nominations, and left the Governor to pursue the law as far as he could. We have decided at this Term that the appointment of directors made by the Governor to manage the Penitentiary and the Asylums during a recess of the General Assembly are valid.

The commissions of the directors of Howerton board are stated in the pleadings to bear date on the 2d day of October, 1871, and we must therefore know that they were appointed when the Legislature was not in session; this circumstance, however, in our view of the case is immaterial, for had the Legislature been in session, the Senate had declared by its acts in advance that they would reject them.

But it was said upon the argument, grant that the Governor had the right to appoint, yet he should have acted

alone, and not by and with the advice and consent of his Council.

We do not rely upon the charter which requires these appointments to be made by and with the advice and consent of the Council of State; but we are of opinion that the Governor's appointments are not prejudiced by asking the advice of his Council.

The appointment of the Howerton board was as regular and lawful as it was possible for the Governor to make it; and it was not in the power of the Legislature either by action or non-action to prevent the Governor from taking charge of the State's interest in this corporation.

The Howerton directors met at the time and place appointed for the regular annual meeting of the stockholders; but the stockholders refused to meet with them, and then Mott the President of the Board, which had been illegally displaced, called another meeting of the stockholders in pursuance of the by-laws of the corporation, to be held at Statesville, on the 26th day of October, 1871; but still the stockholders refused to recognize or act with this board.

The directors on the part of the State then organized as a board and elected Howerton as their President, and afterwards, to-wit: on the 6th day of November, 1871, at Morganton, proceeded to fill the four vacancies in their body in accordance with the 18th section of the original charter, which enacts that the board of directors may fill vacancies which may occur in it, during the period for which they have been elected, &c.

Not only do we find this provision in the charter, but one of the by-laws adopted unanimously at the annual meeting in 1869, is as follows: " All vacancies in offices which are elective by the stockholders, shall be filled by the board of directors until an election be made by the stockholders."

As there had been no legal election of directors by the

stockholders, it was the duty of the directors to fill the vacancies in their board.

It would seem strange if private stockholders, owning but a small portion of the stock, in a corporation, could by absenting themselves from the regular meetings and refusing to act with the representatives of the State, defeat the State's interest and take charge of the whole corporation. If the private stockholders have no directors chosen by themselves on this board, it is their own fault.

The fact that the board of directors was afterwards, to-wit: on the 6th November, 1871, completed by filling the four vacancies, and that they then re-elected Howerton, does not affect the question; the full board only ratified what was valid before.

Those directors of the Mott board, who assisted in turning it out, and afterwards went into the Tate board, forfeited their claim to be considered members of the Mott board, after the meeting at Salisbury.

Our conclusion is, that the Tate board are not the lawful directors of the road, and that they must be ousted from the same.

And further, that the members of the Mott board, who had not forfeited their offices, were the lawful directors, and entitled to the possession of the same, up to the 26th day of October, 1871, when the Howerton board organized at Statesville, and that from and after that day the Howerton board, were the only persons lawfully entitled to the possession of the road.

We refer to the case of the *People* v. *McKee*, at this term, for the form of the judgment to be entered in this case.

PER CURIAM.                    Judgment affirmed.