State ex inf. v. Washburn.

THE STATE ex inf. HADLEY, Prosecuting Attorney, v. WASHBURN, Election Commissioner, Appellant.

**In Banc, March 19, 1902.**

1. **Governor's Power of Appointment:** CHOICE TO BE MADE FROM CERTAIN PERSONS. The statute required that one of the three election commissioners for a certain city should "be chosen from three eligible citizens named by the city central committee of the leading party politically opposed to that to which" the other two commissioners belonged. *Held*, that the Governor's choice was not confined to the three men named by the party committee, but he might choose any other eligible person to be the third member of that commission. The Legislature can not compel the Governor to register the will of such a committee, for such a committee is no part of the executive department of the State government; nor can it in such way usurp the executive power of appointment.

2. ————: DELEGATION: PRACTICAL EFFECT. The power given to a partisan committee to name certain persons from whom the Governor must name an election commissioner is in effect conferring on such committee the power of appointment, since, by a mere formal circumlocution, it leads to the appointment.

3. ————: ————: CONSTITUTIONALITY: EXCLUSIVE PRIVILEGE. An act that confers on the committee of only one political party the power to name three persons from whom the Governor is to appoint an election commissioner is in violation of that part of the Constitution which says: "The General Assembly shall not pass any local or special law......granting to any corporation, association or individual any special or exclusive right, privilege or immunity." Such act does not segregate the citizens of the State into classes according to natural conditions, and even if it did, it does not treat all in that class alike. It confers a privilege on the committee of one political party and withholds it from the committee of all other parties. By its very terms it is intended to operate discriminatingly in favor only of "the party politically opposed to that to which" the other two election commissioners belong.

4. ————: APPOINTMENT: LEGISLATURE'S CONSTITUTIONAL POWER. That part of the Constitution that says "the appointment of all officers not

otherwise directed by this Constitution shall be made in such manner as may be prescribed by law," gives the General Assembly power to pass a law prescribing the manner in which appointments shall be made, but it does not authorize it to make the appointments itself, nor to authorize anyone unconnected with the State government to do so.

5. ———: PUBLIC OFFICER: ELECTION COMMISSIONER. An election commissioner is a public officer, and a State officer in the same sense that a sheriff or circuit clerk is a State officer, and as such he exercises powers properly belonging to the executive department of the State government, and that being the case he must trace his right to his office to that department.

6. ———: ———: PARTY COMMITTEE. The central committee of a political party is not a public officer and is no part of the executive department of the State government.

7. ———: DISTINCT GOVERNMENTAL DEPARTMENTS. The Constitution expressly says that the Legislature shall not exercise powers properly belonging to the executive or judicial department of the State government, and that is as explicit a statement that the Legislature shall not exercise the power of appointment as if it had specifically said that "the General Assembly shall not make appointments or render judgments."

8. ———: ———: LEGISLATIVE APPOINTMENT: BY DESCRIPTION. The creating of an office and the naming by description of the men who are to fill it, by the Legislature, is, in effect, creating the office and appointing the incumbents, or both making and executing the law.

9. Unconstitutional Law: INVALID IN PART. Where the unconstitutional part of a statute does not enter into the life of the act itself, and is not essential to its being, it may be disregarded and the rest remain in force.

Appeal from Bates Circuit Court.—*Hon. W. W. Graves,* Judge.

REVERSED.

*Clark & Francisco, E. E. Yates* and *W. M. Williams* for appellant.

(1) The paragraph of the Act of 1899 granting to the city central committee of one political party, to the exclusion

of all others, the special right and privilege of naming three persons from whom the election commissioner should be chosen, contravenes section 53 of article 4 of the Constitution of this State, which declares:    "The General Assembly shall not pass any local or special law, granting to any corporation, association, or individual any special or exclusive right, privilege or immunity."    The court will take judicial notice of matters of current history, and that there were more than two political parties, duly organized, with central committees, in Kansas City, in the year 1899, and that there are still such parties therein.    State ex rel. v. Denny, 21 N. E. 284; State ex rel. v. Bland, 144 Mo. 534; Grimes v. Eddy, 126 Mo. 168; Holmes v. Kring, 93 Mo. 452.    It is held by the Supreme Court of California in Britton v. Board of Election Commissioners of San Francisco, 61 Pac. 1116, where a statute undertakes to deal with political parties as such, and to confer rights or impose obligations, it must deal with them without discrimination.    Section 53 of article 4 of the Constitution prohibits what is commonly known as "class legislation."    The granting of any special or exclusive right, privilege or immunity to any corporation, association or individual by any special law is within its terms.    It does not refer to grants of mere property rights.    State v. Walsh, 136 Mo. 400; State v. Thomas, 138 Mo. 95.    The central committee of the leading party politically opposed to that which the chairman and secretary of the board of election commissioners belong is an "association" within the meaning of section 53 of article 4 of the Constitution.    The words "corporation," "association" and "individual," used in the Constitution, are intended to be "all-embracing."    The power to appoint to office belongs to the people of the State in their sovereign capacity.    It is a franchise or privilege primarily resting with the people, the source of all power.    A special law delegating to an individual or association this franchise confers a special right or privilege upon such individual or association.    People v. Lasher, 55 N. E.

663. A statute which relates to persons and things of a class is violative of section 53 of article 4 of the Constitution. Members of different political parties must stand upon an equality before the law. One class of citizens, simply because they belong to a certain party, can not, under the Constitution, be given a special right or privilege not shared by other citizens. City of Evansville v. State, 21 N. E. 267; State ex rel. v. Denny, 21 N. E. 15; Rathbone v. Wirth, 45 N. E. 15; People v. Hurlbut, 24 Mich. 44; Attorney-General v. Detroit, 24 N. W. 887; Mechem on Public Officers, sec. 98; Cooley on Const. Lim. (1 Ed.), sec. 390; Baltimore v. State, 15 Md. 468. (2) A citizen having all the other qualifications can not be prohibited from holding office simply because of his party affiliations . He can not be proscribed on account of his political opinions. The Legislature can not declare that no member of a certain political party shall be eligible to office. Const. sec. 30, art. 2; State v. Julow, 129 Mo. 172; Baltimore v. State, 15 Md. 468; Cooley on Const. Lim., 390; City of Evansville v. State, 21 N. E. 270; Attorney-General v. Detroit, 24 N. W. 889. (3) The Legislature was not required by the Constitution to confer the appointing power upon the Governor in this case, but having conferred the power upon him, with the duty and responsibility of making the selection of persons of approved integrity and capacity, it could not make him a mere puppet to register the will of a partisan committee. State ex rel. v. Judge, 47 La. An. 59; State ex rel. v. Dougherty, 13 Am. Rep. 131. (4) The objectional provision, namely, "one of said election commissioners so appointed by the Governor shall be chosen from three eligible citizens from the leading political party opposed to that to which the chairman and secretary belong," may be eliminated from the act and the remainder enforced. Clayton v. People of Utah, 132 U. S. 632.

*John H. Lucas* and *Gage, Ladd & Small* for respondent.

(1) (a) It is claimed that this provision is in conflict with sec. 53, art. 4, which, among other things, prohibits the Legislature from passing any special or local law, granting any special privilege or franchise to any individual, association or corporation. In support of this contention, the case of People v. Lasher, 183 Ills. 226, decided by the Supreme Court of Illinois, was cited, where it was held that a law which vested in five particular private corporations named in the act, the power to appoint an official board, was a special law vesting a special privilege in a corporation, contrary to a similar constitutional provision in the State of Illinois. But in Indiana, where the same constitutional restriction as to granting privileges or franchises by special laws, exists, as in Illinois and in this State, a directly opposite ruling was made, and it was held that the Legislature could vest the power to appoint an official board, in particular private corporations, and that such power of appointment to office, was not a privilege, immunity or franchise, but was a public duty, when imposed by a law upon a given person or corporation. Wilkins v. State, 113 Ind. 298; Fernor v. State, 151 Ind. 247; Oversheimer v. State, 59 N. E. 468. (b) The city central committee, upon which the power of appointment, or rather of nomination, is conferred by the law in question, is neither a corporation, association nor an individual, within the meaning of said sec. 53 of art. 4 of the Constitution. The city central committee is an official body recognized by law (Laws 1899, p. 200), and created for the performance of certain public duties connected with elections by the people, and is no more a corporation or association or individual, within the meaning and intent of said section 53, than the upper or lower house of the common council, or the mayor of a city, or the members of a county court. (c) Said section 53 applies only to local or special laws, and the law under consideration is a general law. (d)

There is no undue favoritism shown to any political party by the provisions complained of. The Governor of the State is always a member of the leading political party in the State—otherwise he would not be Governor—and there was no necessity for providing that the two members appointed by him should belong to any particular party, or be recommended by any party committee, because it goes without saying—it is a part of the unwritten political law of the land, which the Legislature fully understood and acted upon—that the two members appointed by the Governor would naturally be tried and true members of the same party as the Governor himself. The law being just, fair and reasonable, and in no respect arbitrary in regard to the matters complained of, it is not obnoxious to the Constitution of the State or of the United States, as improper, class or special legislation.   People v. Lasher, 183 Ill. 226, cited by defendant; Railroad v. Matthews, 174 U. S. 104; Powell v. Sherwood, 63 S. W. 485. (2)   The following cases from other jurisdictions are against appellant's contention:   Scholle v. State (Md.), 46 Atl. 326; Purnell v. Mann (Ky.), 48 S. W. 407; In re Campbell (Pa.), 47 Atl. 86; State v. George, 22 Ore. 142; State v. Boucher, 3 N. D. 389; People v. Freeman, 80 Cal. 233; also 13 Am. St. Rep. with note by Mr. Freeman; Fox v. McDonald (Ala.), 101 Ala. 51; Oren, Atty-Gen. v. Bolger (Mich.), 87 N. W. 366; People v. Woodruff, 32 N. Y. 364; Mayor, etc., v. State, 15 Md. 445.   In all the above cases it is held that the Legislature has plenary power over the subject of appointments to office, especially under constitutional provisions such as said sec. 9, art. 14, of our Constitution.   It has been repeatedly held in other States that the power of appointment to offices is not essentially an executive function, and may, therefore, in the absence of constitutional restriction, be vested in departments other than the executive.   State v. Swift, 11 Nev. 128; People v. Morgan, 90 Ill. 558; People v. Freeman (Cal.), 22 Pac. 173; People v. Langdon, 8 Cal. 16; Mayor, etc., of Baltimore

v. State, 15 Md. 456, 74 Am. Dec. 572; Fox v. McDonald, 101 Ala. 51, 13 South. 416, 21 L. R. A. 529, 46 Am. St. Rep. 98; People v. Woodruff, 32 N. Y. 356; Biggs v. McBride, 17 Or. 648, 21 Pac. 878, 5 L. R. A. 115; State v. George, 22 Or. 151, 29 Pac. 356, 16 L. R. A. 737, 9 Am. St. Rep. 586; People v. Hoffman, 116 Ill. 601, 5 N. E. 596, 8 N. E. 788, 56 Am. Rep. 793; State v. Boucher, 3 N. D. 389, 56 N. W. 142, 21 L. R. A. 539. These cases support the rule laid down by Mr. Justice Christiancy in the Hurlbut case. (3) The right to hold office concerns neither life, liberty nor property (Taylor v. Beckham, 178 U. S. 567), and the provisions of the Constitution requiring due process of law, etc., have no bearing on this controversy. (4) Under the constitutional provisions which we have cited and relied on, it is clear that the Legislature is vested with the sovereign power of the people of this State over the matter of appointments to office, including the election commissioners for cities of this State. Before a law such as the one under consideration, which is so plainly adapted to secure fair and honest elections in such cities, should be declared unconstitutional, some provisions of the Constitution with which it is in conflict ought to be pointed out, and the conflict ought to be certain beyond reasonable doubt. No such provision has been pointed out in this case.

VALLIANT, J.—This is an appeal from a judgment of the circuit court of Bates county ousting the appellant from office as member of the board of election commissioners of Kansas City, in a proceeding in the nature of quo warranto upon the information of the prosecuting attorney of Jackson county. The suit was begun in the circuit court of Jackson county, and taken by change of venue to Bates county.

The facts in the case are undisputed. An act was passed 'v the General Assembly and approved June 19, 1899, amending the then existing statute in relation to the board of election commissioners in cities having over 100,000 inhabitants, one

part of which amendatory act is in these words: "There is hereby created a board of election commissioners for each city that is governed by the provisions of this act, composed of three members, who shall be appointed as follows: Within ten days after this act takes effect, the Governor shall appoint three election commissioners, one of whom shall be by him designated as the chairman of the board, and one of whom shall be by him designated as the secretary of the board, which said three election commissioners shall hold their offices for the term of three years, and until their successors are appointed and qualified. . . . One of said election commissioners so appointed by the Governor shall be a member of the leading party politically opposed to that to which the chairman and the secretary so appointed belong and shall be chosen from three eligible citizens named by the city central committee of the said leading party politically opposed to that to which the chairman and secretary belong." [Laws 1899, p. 197.]

As in performance of the duty imposed upon him by that act, the Governor appointed three election commissioners for Kansas City, one of whom he designated as president and another as secretary of the board, and the third, who is the member at whom this writ is leveled, was of the leading party opposed politically to that to which the two others belonged. He possessed all the qualifications that were required to render him personally eligible to the office, and immediately upon his appointment qualified and entered upon its duties and was discharging the same when by this proceeding, he was called into court to show by what authority he was so acting. His right to hold the office and discharge its duties is challenged upon one ground only, that is, that he was not nominated by the city central committee of his party. That committee, as contemplated by the Act of 1899, duly named three eligible citizens from whom the choice was to be made. This appellant was not one of the three, but was appointed by the Governor

of his own free choice in disregard of the nominations of that committee. The question for decision therefore is, did the Governor have the lawful authority to appoint to the office one, otherwise eligible, who was not of the three thus nominated?

I. This brings into question the validity, under the Constitution, of the Act of 1899 above mentioned, or so much thereof as essays to confer the power of nomination on the party committee. Appellant maintains that that portion of the act is in violation of section 53 of article 4 of the Constitution which is: "The General Assembly shall not pass any local or special law . . . granting to any corporation, association or individual any special or exclusive right, privilege or immunity."

The purpose of that clause in our Constitution is to secure to every one within the State that equality in right, privilege and immunity, conferred by law, which is an absolute essential to our form of government. It is not to be confused with the idea that it was designed to prevent such inequality in fact in the conditions of individuals as their own acts may bring about it, but it means that such inequality shall not be created by law, that the State shall deal even-handed with all. The same idea runs through the Constitutions of other States and is expressed in forms more or less explicit, but in our Constitution it is comprehensive and clear in its meaning. Is that purpose violated by the statute in question which seeks to confer upon the committee of one political party the right to appoint an officer to exercise a governmental function in the matter of State elections when the same right is not given to any other partisan committee?

Although the power here attempted to be conferred is not literally the power of appointment, yet its effect is the same, it leads to the appointment, and if the Legislature has the authority to confer the power to nominate, in the manner indicated, it has the authority to confer the power to appoint without the circumlocution, which is merely formal. If the Gover-

nor may be compelled to select one of three, he may be limited in his preference of one of two, and, either in form or in skillful practice, there might be no choice left to the executive at all.   We must consider the statute, therefore, as conferring on the partisan committee the power tó name the officer, for such is the effect.

The clause of our Constitution above quoted does not prohibit the General Assembly passing a statute to affect particularly one class.   Since there are classes of individuals and corporations so essentially different from other classes as that a law designed to apply to all would apply to some in one way and to others in another, or to some in one degree and to others in a larger degree, it becomes absolutely necessary that laws should be made to affect particular classes, else the very inequality sought to be avoided would be produced.   A law might be uniform in theory yet in its operation produce unjust discrimination, discriminating in effect by failing to discriminate in form, that is, by failing in shape to fit the unequal conditions to which it must apply.   Therefore, a law is not within the constitutional inhibition because it is designed to operate on one class only, provided the conditions reasonably justify the distinguishing of the class, and provided it affects equally all who come within that class.   [Hamman v. Central Coal and Coke Co., 156 Mo. 232.] But if the attempted classification be arbitrary or if the statute essays to confer a "right, privilege or immunity" upon one or some in the class and not upon all, the act is invalid.   [State v. Walsh, 136 Mo. 400; State v. Thomas, 138 Mo. 95.]   Does this Act of 1899 recognize the existence of a class by natural conditions and does it affect all in that class alike?

The Legislature certainly had in view the fact that there were great political parties in the State and that the management of the affairs of those parties was in the hands of their respective party committees.   That is a natural and reasonable

Vol 167 mo—44

classification, and legislation to affect that class is not forbidden by the Constitution. Laws to govern the administration of the affairs of political parties have been enacted and their validity has not been questioned. But if, for example, an act should be passed by the Legislature to govern primary elections and should provide that the county central committee of that party by name which happened to have the majority in the General Assembly should have the privilege of appointing the judges and clerks of their primary elections, but that the Governor should appoint those of the next largest party and the county court should appoint those of other parties, what would be thought of such a law, not merely of its policy or fairness, but of its validity under the Constitution?

It is said, however, that here the party whose committee is given the right to appoint the officer is not designated by name and that any party is liable to fill the description; that it may apply to one party in one city and at the same time to another in another city; to one party in this city to-day and to another party in the same city next year. But whilst that is true, the fact is that when and where the law does take effect, it confers a right on the committee of one party and withholds it from committees of all other parties. The fact that it may operate to the advantage of one party in one place or at one time and to that of another party in another place or at another time, is of no consequence; the vice is that when it does operate it discriminates in favor of one party, it confers an important right under the State government to one of a class and withholds it from the rest. That is exactly what the Constitution forbids.

It is argued that the theory of the statute is that the Governor will protect the interests of his own party, but that the interest of the next largest political party should be intrusted only to its own party committee. That argument doubtless had its weight in the General Assembly, where alone it is appropriate, but courts have nothing to do with the policy

of a statute; they deal only with the question of its validity when it is assailed.     The General Assembly is not always composed of men of two political parties only, and if there were representatives in that General Assembly belonging to a third party they might have questioned even the policy of the law which excluded all members of their party from a share in its administration.

II.     There is another constitutional standpoint from which this case should be viewed, and from which the Act of 1899, in question is equally indefensible.     By article 3 it is ordained as follows:     "The powers of government shall be divided into three distinct departments—the legislative, executive and judicial—each of which shall be confided to a separate magistracy, and no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, except in the instances in this Constitution expressly directed or permitted."

All governmental powers are in their natures either legislative, executive or judicial.     The Constitution does not undertake to define what acts fall within the one class or the other, but leaves every act to be classified according to its nature, recognizing that the essentials which distinguish those that belong to one department from those that belong to the two others, are discernible to the learned mind.     But in that article of the Constitution all the powers of the State government are disposed of, and every one who lawfully exercises any State governmental function is able to trace the source of his authority to one of the three departments there named. The power, whatever its character, can be exercised only by or under authority of the separate magistracy to which by the Constitution it is assigned.

The election commissioner is an officer who exercises an important function of the State government, affecting not alone the city in which his duties are performed, but the

whole State.   He fills, therefore, in its full sense,  the defini-
tion of a public officer.   He is not a State officer within the
narrow meaning of that term as used in section 12, article 6,
which confers jurisdiction on this court in cases in which a
State officer is a party, but he is an officer of the State in the
sense that a sheriff or a circuit clerk is an officer of the State.
[State ex rel. v. Dillon, 90 Mo. 229; State ex rel. v. Bus, 135
Mo. 325; State ex rel. v. Higgins, 144 Mo. 410.]   A public
officer exercising a function of the State government is an
agent or servant of the sovereign people of the State, and
must derive his authority either by election by the people or
appointment by that tribune to whom the people have confided
the power of appointment.   It is therefore necessary that he
should trace his title to the office to the department of the
State government to which, under article 3 above quoted, the
power to confer title to such an office is committed.

But suppose, when called into court to show by what
authority he holds the office, he shows that he has been ap-
pointed by the city central committee of his political party, to
what department of the State government would we charge
the appointment?   It may be said, however, that the com-
mittee is not to make the appointment, it is to be made by the
Governor.   If the Governor of his own free will makes the
appointment, even if he selects one of the three nominated by
the committee, it is his appointment and the appointee may
truly say that he holds by appointment under the executive
department.   But we are concerned now with the question
of the power of the Legislature to. compel the Governor to
make the appointment from one of the three named by the
committee and we are asked to say that the Governor, by force
of this act, can not do otherwise than register the will of the
committee.

If that is the law, then, in reality, what would be the
source of an appointment under it?

We are referred to section 9 of article 14 of the Consti-

tution which is: "The appointment of all officers not otherwise directed by this Constitution shall be made in such manner as may be prescribed by law." And it is contended that that section confers authority on the General Assembly for this act. That section expressly authorizes the General Assembly, acting within its legislative capacity, to pass a law prescribing the manner in which an appointment shall be made, but it does not authorize the General Assembly to make the appointment itself nor to authorize any one unconnected with the government to do so. To provide by law the manner in which an appointment shall be made is one thing, to make the appointment is another; the one is in its nature legislative, the other is essentially executive. The Constitution authorizes the Legislature to do the one, but not the other.

Article 3, above quoted, confides the exercise of executive functions to a separate magistracy. When the General Assembly undertook in this Act of 1899, to confer upon the city central committee of a political party the power to appoint to an important office in the State government, did it intend thereby to elevate that committee into the executive department of the State government and make it a part of that separate magistracy to which administrative functions of the government were intrusted?

If the General Assembly had essayed to appoint the third election commissioner itself the act of appointment would clearly have been void, because it would have been an attempt to exercise executive power. Since the Legislature can not appropriate to itself a power that the Constitution has conferred on the executive, can it rob the executive of that power by conferring it on an outside unofficial agency of its own appointment?

The act of appointing to a governmental office is in itself the exercise of a governmental function, and can be exercised only by a governmental officer. Therefore, when the power to make such appointment is conferred on a thitherto unoffi-

cial person, if the act conferring the power is valid, the person on whom it is so conferred becomes *ipso facto* a public officer. [Mechem Pub. Off., sec. 11.]    Assuming then, for the sake of the argument, without so deciding, that the Legislature had the power under section 9 of article 14 to create an office to exercise the function of appointing the third member of the board of election commissioners, still it had no right to appoint the person or persons who should fill the office so created.

The Constitution of Ohio contains a clause very similar to section 9, article 14, of our Constitution above quoted.    In that State the Legislature passed a law creating a board of commissioners to do certain public service, and in the act named three individuals and authorized them to appoint the members of the board of commissioners.    The question of the validity of the appointments made by these three persons came before the Supreme Court of that State and it was held that the act of the Legislature in that particular was unconstitutional; that whilst the Constitution gave the Legislature the power to create the office of board of commissioners and prescribe by law the manner of appointment, it did not give it the power to make the appointment and that the naming of the three individuals and conferring on them the power to make the appointment, was, in itself, the creation of another office and the appointment by the Legislature to that office.    [State ex rel. v. Kennon, 7 Ohio St. 546.]    The same view of the subject has been taken by the Supreme Court of North Carolina.    [State ex rel. v. Stanley, 66 N. C. 59; State ex rel. Howerton v. Tate, 68 N. C. 546.]    There was a clause in the Constitution of each of those States expressly denying the Legislature the power to appoint to office, but whilst our Constitution does not in express terms say that the General Assembly shall not exercise the power of appointment to office, it does expressly say that it shall not exercise a power properly belonging to either of the other departments and that is as

explicit as if it had specified that it should not make appointments or render judgments.

When, therefore, the General Assembly undertook to confer the power to appoint the third election commissioner of Kansas City on a body of men not officially connected with the State government, it undertook in effect to create an office to exercise the governmental function of filling by appointment another public office and not only to create such office but to name by description the men who were to fill it, in effect creating the office and appointing the incumbents, making the law and executing it.    Section 9, article 14, gives no such power, and article 3 forbids it.

We are referred to Ex parte Lucas, 160 Mo. 218, which it is claimed sustains a similar act of the General Assembly. But there is a wide difference between that case and this.    The act of the Legislature in the Lucas case required the Governor to appoint a board of examiners to pass on the fitness of persons to be licensed to conduct the business of barbers in cities having over 50,000 inhabitants and to make his appointments on the nominations of the barbers' unions in the cities affected. That act of the Legislature treated all barbers' unions as a class and did not confer "a right, privilege or immunity" upon one union that it did not confer on all in the class.    It did not appear in that case that there was more than one union in each city.    Therefore, the act did not fall within the limits of section 53, article 4, as discussed in the first paragraph of this opinion.    Besides, in that case, there was no suggestion that the Governor in fact did not appoint those persons, nominated by the barbers' unions, therefore, the question of his authority to ignore those nominations, and appoint whomsoever his judgment dictated, was not in the case.    Any citizen has the right to recommend to the Governor a person for appointment; not only individuals but political committees and trade unions do in fact make such nominations, and if the Governor sees fit to appoint one so nominated, the appointment is as much the

free act of the executive as if he had been unaided by the outside suggestion. But acting in accordance with recommendations is one thing, while yielding to dictation is another. That idea is clearly expressed in the Lucas case by MARSHALL, J., who delivered the opinion of the court: "If the act is unconstitutional because it limits the Governor's privileges of appointment to persons recommended by the unions specified, the Governor alone could object. If he does not do so no one else can complain. That no such trouble has arisen under this act, is shown by the fact that it appears that in fact the Governor has appointed a board of examiners—whether they were recommended by such unions or whether the Governor treated that provision of the act as unconstitutional and appointed such persons as he chose does not appear—and that this prosecution is at the instance of that board." We say nothing now that is in conflict with anything that was decided in that case.

The act of filling a public office by appointment is essentially an administrative or executive act, and, under the Constitution, can be exercised only by an officer charged with the duty of executing the laws. There is, however, an exception to this rule which does not conflict with the meaning of article 3. Courts and the General Assembly may appoint such officers or agencies, as are necessary to the exercise of their own functions. This power is essential as a right of self-preservation, and is necessary to preserve that very independence in the several departments of the government, which article 3 is designed to guard. [Mechem Pub. Off., secs. 104 and 105.]

There are other reasons urged by appellant in defense of his title to the office in question, but as we are satisfied upon the grounds above stated that so much of the Act of 1899 in question as attempts to limit the power of the Governor in making the appointment to a choice of persons nominated by the city central committee of a political party, is an unwar-

ranted encroachment on the Governor's constitutional powers, it is unnecessary to consider the other questions.

The point is advanced that if the Act of 1899 is unconstitutional in the particular named, the whole act is void and the incumbent has no title to the office. The power attempted to be conferred on the partisan committee is not an essential element in the whole act. Where the part of an act that is unconstitutional does not enter into the life of the act itself, and is not essential to its being, it may be disregarded and the rest remain in force; that is this case.

The record shows a perfect title in appellant to the office in question, and, therefore, the judgment of the circuit court is reversed.

All concur, except *Sherwood* and *Robinson, JJ.*, who dissent.