**MILLER et al. v. EL PASO COUNTY et al.**
No. 4078.

Court of Civil Appeals of Texas. El Paso.
Dec. 19, 1940.

Rehearing Denied Jan. 9, 1941.

1028

Gerald C. Mann, Atty. Gen., R. W. Fairchild and Glenn R. Lewis, Asst. Attys. Gen., and Fred C. Knollenberg, of El Paso, for appellant.

Ernest Guinn, Co. Atty., Frank B. Clayton, City Atty., Thornton Hardie, Eugene Smith, Louis A. Scott, and Potash & Cameron, all of El Paso, for appellees.

PRICE, Chief Justice.

This is an appeal from a judgment of the District Court of El Paso County by the plaintiffs and the intervener, State of Texas, in an action wherein the County of El Paso and the individuals composing the Commissioners' Court and other functionaries of the county were parties defendant. The injunction sought by plaintiffs and the intervener was denied by the court. Intervener and plaintiffs perfected this appeal.

The statement of the nature and result of the suit made by the appealing intervener is admirable in clarity and brevity, and we literally adopt same.

This suit involves the constitutionality of Senate Bill No. 18, Ch. 370, p. 1541, First Called Session of the 44th Legislature, Vernon's Ann.Civ.St. art. 2352b, an act attempting to authorize the levy of a five-cent tax for use in advertising and promotional purposes in "counties * * * having a population of not less than 125,-000 inhabitants and not more than 175,000 inhabitants, and containing a city having a population of not less than 90,000 inhabitants, as shown by the last preceding Federal Census."

J. R. Miller and other taxpayers filed the suit, the State intervening on their side, seeking an injunction against the continued levy and collection of the tax and to prevent the further expenditure of the sums for the purposes which the statute attempted to authorize. It was also sought to enjoin the Tax Collector from demanding and requiring payment of the advertisement tax as a condition to the acceptance of State ad valorem taxes and other county ad valorem taxes. Various provisions of the Constitution were alleged to be violated. After a trial, the court declined to hold the Act unconstitutional and entered judgment for defendants, the plaintiffs and intervener excepting and giving notice of appeal. Findings of fact and conclusions of law were filed. The State excepted to the conclusions.

The case involving the constitutionality of Senate Bill 18, First Called Session, 44th Legislature, Vernon's Ann.Civ.St. art. 2352b, we deem it appropriate to copy same in full, except the caption and emergency clause. With these exceptions, the Act is as follows:

"Section 1. In all counties in this State having a population of not less than 125,-000 inhabitants and not more than 175,000 inhabitants, and containing a city having a population of not less than 90,000 inhabitants, as shown by the last preceding Federal Census, a direct tax of not over Five (5) Cents on the valuation of One Hundred ($100.00) Dollars may be authorized and levied by the Commissioners' Court of such county, for the purpose of advertising and promoting the growth and development of said county and its county seat; provided that before the Commissioners' Court of any such counties shall be authorized to levy any tax for such purpose, the qualified tax paying voters of the county shall by a majority vote authorize the Commissioners' Court to thereafter levy annually a tax not to exceed Five (5) Cents on the One Hundred ($100.00) Dollars assessed valuation.

"Sec. 2. The amount of money collected from such levy of taxes by the Commissioners' Court of any such county shall be paid to the Board of County Development in twelve (12) monthly installments as collected. All moneys received by the Board of County Development from such tax shall be expended only for the purposes authorized by this Act; and such Board shall annually render an itemized account to the County Auditor of all receipts and disbursements.

"Sec. 3. There is hereby created in such counties as may vote in favor of this tax a Board of County Development, which shall devote its time and efforts to the growth, advertisement and development of any such county. The Board of County Development shall consist of five (5) members; two (2) to be appointed by the Commissioners' Court of such counties, representative of the agricultural interest of such counties, who shall reside outside the county seat of any such county; and three (3) of whom shall be appointed by the Board of Directors of the Chamber of Commerce of the county seat of such county, one of such three members to be a member, in good standing, of organized labor. Said members shall serve

for a period of two (2) years from their appointment,' without compensation, and until their successors are appointed and accept such appointment. Vacancies on such Board shall be filled in the same manner as the original appointments, and by the same agencies.

"All members of such Board of County Development shall be qualified tax paying voters of the county in which they are appointed to serve."

The assignments and propositions of each appellant, although in slightly different phraseology, are practically the same, and hence will be here treated as though identical throughout.

The State of Texas presents the following as propositions and assignments of error:

"Said S.B. 18 violates Art. 3, Sec. 56, of the State Constitution, in that same is a local or special law applicable to El Paso County only, attempts to regulate the affairs of said county, to create offices therein and to prescribe their powers and duties, and the trial court erred in holding to the contrary."

Second proposition: "In attempting to confer upon the Board of Directors of the Chamber of Commerce of El Paso, a civic and private organization, the power and authority to appoint three of the five members of the Board of County Development—the body charged with the responsibility of expending the funds raised by taxation under the Act—said S.B. 18 confers upon the persons composing the Board of Directors of the Chamber of Commerce exclusive privileges and violates Article 1, Section 3, of the State Constitution, and the trial court erred in holding otherwise."

Third proposition: "Said S.B. 18 violates Article 1, Section 18, of the State Constitution, in that the exaction of taxes to be expended by a Board, the majority of whom are not responsible directly or indirectly to the people taxed, is a taking of property beyond and outside of the due course of the law of the land."

Fourth proposition: "In providing for the appointment of three members of the Board of County Development by the Board of Directors of the El Paso Chamber of Commerce, said S.B. 18 attempts to make a delegation and surrender of governmental authority, contrary to Article 2 of the State Constitution, and the trial court erred in holding to the contrary."

Fifth proposition: "In providing that one member of the Board of County Development shall be a member, in good standing, of organized labor, said S.B. 18 violates Article 2, and Article 3, Section 1, of the State Constitution, and the trial court erred in holding to the contrary."

By three separate Acts the Legislature has sought to confer the power on certain classes of counties to levy a tax for advertising purposes. The first Act was passed by the 41st Legislature, Fifth Called Session, p. 182, Ch. 42, Sec. 1. It now appears as Article 2352a, Vernon's Civil Statutes, and provides, in substance, counties having a population of at least 202,000 and less than 210,000 inhabitants, as shown by the census of 1920, were authorized to levy a direct tax for advertising purposes. The Act we have here in question was passed in 1935, 44th Legislature, First Called Session, p. 1541, Ch. 370, in Vernon's Civil Statutes, Article 2352b. The 46th Legislature, Special, p. 966, passed an Act authorizing counties having a population of not less than 40,000 inhabitants and not more than 50,000, and containing a city having a population of not less than 30,000 inhabitants nor more than 40,000 inhabitants, as shown by the last preceding Federal Census, to levy a direct tax for advertising purposes. Article 2352c, Vernon's Ann. Civil Statutes.

None of these Acts appears to have been called in question before the institution of this case.

In the case of Davis v. City of Taylor, 123 Tex. 39, 67 S.W.2d 1033, the question of the validity of an advertising tax levied by the City of Taylor came before the Supreme Court. The City of Taylor, being a Home Rule City, by amendments to its Charter, authorized the levy of a tax on the property within the city for advertising purposes. In the charter amendment a Board of City Development was provided for substantially along the same lines as the Board for county development provided for in the Act here under consideration. It was held that the City had the power to levy such a tax, and that on so doing Article 8, Section 3, of the Constitution, Vernon's Ann.St., was not violated, which provides "taxes shall be levied and collected by general laws and for public purposes only."

Most stressed here is the contention that the law is a local or special law within the meaning of Article 3, Section 56, of the Constitution. The clauses of Article 3, Section 56, invoked are as follows:

"The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law, authorizing:
* * *

"Regulating the · affairs of counties, cities, towns, wards or school districts;
* * *

"Creating offices, or prescribing the powers and duties of officers, in counties, cities, towns, election or school districts;"

■ If this Act is a local or special law, it must fall, as in no other place in the Constitution is authority given to pass a local or special law dealing with the subject matter dealt with by the Act. By its terms the Act is general, in that it operates generally throughout the State as to counties then or thereafter coming within its provisions. We can attach no weight to the contention made by appellants, other than the State, that the words "last preceding Federal Census," bind the prospective operation of the law in the future as to counties having the population as shown by the 1930 census. Article 23, Section 8, Vernon's Texas Civil Statutes. In fact, if this construction were adopted, the law would have no prospective extended operation.

In the case of Clark v. Finley, 93 Tex. 171, 54 S.W. 343, 345, principles for determining the character of a law as to being general, as distinguished from local or special, are set forth. The test there approved is as follows: "A statute which relates to persons or things as a class is a general law, while a statute which relates to particular persons or things of a class is special, and comes within the constitutional prohibition."

This standard of distinction was set forth by the Supreme Court of Pennsylvania in the case of Wheeler v. Philadelphia, 77 Pa. 338. It was quoted with approval by Judge Gaines in the case of Clark v. Finley, supra.

■ As we understand the rule, as approved and applied by the Supreme Court of Texas, a law, to be a general law, must apply to a class as such, and not to only a part of such class. In other words, a real class must be involved and not part of a class. By "real class," we

mean a class designated on some reasonable basis having regard to the purpose of the law as distinguished from a class designated on a purely arbitrary basis; that is, one without logical relationship to the purposes of the statute.

■ It is vigorously urged here that El Paso County was at the time of the passage of the Act the only county in the State in which the Act operated. The trial court so found, based on matters of public and general knowledge of which it was proper to take judicial notice.

■ By the census of 1930 El Paso County had a population of about 131,000 and the City of El Paso a population of about 102,000. No other county at that time within the State came within the conditions prescribed by the law. However, these facts alone, in our opinion, are insufficient to condemn the law as a local or special law. City of Ft. Worth v. Bobbitt, 118 Tex. 14, 36 S.W.2d 470, 41 S.W.2d 228; O'Brien v. Amerman, 112 Tex. 254, 247 S.W. 270.

By the terms of the law, if other counties came within the conditions prescribed, such counties might exercise the power conferred by the Act. The conditions were not, theoretically at least, impossible of fulfillment. It is beyond human judgment to foretell the growth of population or decrease thereof, or shifts of population occurring in a great State which, relative to area and natural wealth, is sparsely populated.

■ Appellants urge further that while population is frequently the basis for classification of counties for many purposes, it is not a proper basis here, but is arbitrary and wayward. That for some purposes of classification it is the proper basis cannot be gainsaid. The case of Clark v. Finley, supra, is an illustration of where same was held to be an appropriate basis. It related to the classification of counties as to fees to be charged by officers for their services. Dry v. Davidson, Tex.Civ. App., 115 S.W.2d 689, writ refused, is an example of a classification of cities as to population.

In support of this contention, and generally in support of its first proposition, the following authorities are cited by appellants: 25 R.C.L. 815, 816; 12 American Jurisprudence, p. 146; Smith v. State, 120 Tex.Cr.R. 431, 49 S.W.2d 739; Randolph v. State, 117 Tex.Cr.R. 80, 36 S.W.2d 484;

Clark v. Finley, 93 Tex. 171, 54 S.W. 343; Ft. Worth v. Bobbitt, 118 Tex. 14, 36 S. W.2d 470, 41 S.W.2d 228; Bexar County v. Tynan, 128 Tex. 223, 97 S.W.2d 467.

■ Before considering the authorities, it is appropriate to discuss the basis of classification adopted in the assailed law and in a measure the factual situation existing at the time of the passage of the legislation. We take it that the situation confronting the Legislature at the time of the passage of the Act is of prime importance in determining whether an act is a special or local law or a general law. In a sense population is used as a basis of the classification. In our opinion, however, something more than mere classification based on numbers alone is here evidenced. In order to come under the law, a county must at all times have more inhabitants in the city than outside the city. This preponderance of population must be concentrated in one city. Referring to the facts involved as to the City and County of El Paso, and using the Texas Almanac, we find that in 1930 El Paso County had a total population of 131,597, as disclosed by the census of that year; that 102,421 resided in the City of El Paso, 9,181 resided on farms, and 19,995 were nonfarming rural inhabitants. We think it is likewise fair to assume from the above that taxable values within the City of El Paso greatly exceeded those without. Further, the City of El Paso was the only incorporated city or town within the limits of El Paso County; that, aside from the town of Fabens, all banking facilities of the county were situated in the City of El Paso.

Intrinsically and inherently, we think, the law makes a classification of inhabitants as to being rural or urban; and further, that more than half the urban inhabitants must be in one city in the county. This same classification appears in the law passed in 1939 as to the levying of advertising taxes by a county having a population of not less than 40,000 and not more than 50,000, and in which is located a city of not less than 30,000 nor more than 40,000 inhabitants.

In short, most of the taxable value of the county was in the City of El Paso; most of the inhabitants of the county resided in the City of El Paso. It is obvious that there was a marked identity of interests between the rural residents and the urban population. Judicious advertising of either part would benefit the other; in truth, we think it might be said that it was practically impossible for either part of the county to advertise without advertising the other. The city was the only city in the county, its interest in no way conflicted with the interests of the other portion of the county, or any part thereof. The burden of the contemplated taxation would be borne in a large measure by the inhabitants of the city. This advertising, as contemplated, would be beneficial to the entire county. Reason and justice would seem not to forbid that all of the inhabitants help in bearing the burden.

■■ But why the provision that the minimum of population be 125,000? We think where there is a large population it is reasonable to presume that taxable values bear some relationship thereto. It might be in the county, with a smaller population, without an undue burden, sufficient funds could not be obtained to effectively advertise; it might have been thought that a city of less than 175,000 inhabitants could not well bear the burden of the expense of such advertising alone. In our opinion it might be logically said, by the exercise of a power to tax all the property in the county, sufficient funds to effectively realize the purpose of the Act might be obtained; whereas funds from taxation of the property within the city limits alone might be insufficient for such purpose. Classification is primarily a question confided by the Constitution to the legislative branch of the State Government. It is not for the courts to say this power has been exercised unwisely. If it clearly appears that the action taken is arbitrary and without basis in fact and reason, then, and then only, may the courts say that the Act violates the restrictive provision in the Constitution in question. Clark v. Finley, supra; O'Brien v. Amerman, supra; Gerard v. Smith, Tex.Civ.App., 52 S.W.2d 347; Wood v. Marfa Independent School Dist., Tex.Civ.App., 123 S.W.2d 429.

Perhaps from the very nature of the two municipal corporations a city is endowed with a wider scope of activity than a county in the interests or the promotion of the interests of its inhabitants. If this be true, to our minds, it affords an additional basis for the classification made in the Act in question here. It is fair, we think, to infer that most of the some 19,000 or more rural inhabitants not living on farms have

business or employment in the City of El Paso.

■ Under the conditions laid down in the Act, the interests of the people residing in the city and outside same are peculiarly identical and suggest co-operation,— co-operation between the two municipal corporations, one exercising governmental functions co-extensive with the entire area, and the other in only a part. The Legislature has seen fit to facilitate this co-operation by endowing the county with the power to levy the tax so as to distribute the burden among' all benefiting therefrom. The end sought to be achieved is certainly lawful. In a broad and general sense benefits may accrue therefrom to the entire population of the State.

What we have before said we think in no way conflicts with the reasoning of the cases cited by appellants as to the Act in question being local or special. In Randolph v. State, 117 Tex.Cr.R. 80, 36 S.W.2d 484, it was held that a qualification for a jury service depending on the relative size of counties rendered the law invalid. No argument is needed to support the soundness and justice of this decision. Eligibility of a juror clearly should not be made to depend on the place or the size of the place where he lives. Randolph v. State, supra, and City of Fort Worth v. Bobbitt, supra, each, we think, falls in the same class. The Acts of the Legislature in question there were held unconstitutional primarily because the manifest intent of each was to inflexibly confine the operation thereof to one locality.

Bexar County v. Tynan, supra, struck down the act in question as local or special legislation because the basis of classification bore no reasonable relation to a legitimate object. In effect, the Act reduced the compensation to be paid to the officers of Bexár County below the maximum allowed officers in counties of 37,500 population. Bexar County at the time had a population of 292,533. The effect of this Act manifested beyond question the arbitrariness and waywardness of the classification attempted.

■ We hold the Act in question here is a general law for the reason there is a reasonable relation between the standard of classification adopted and the object of the Act.

All assignments questioning the validity of the Act as a local or special law within the prohibition of the Constitution are therefore overruled.

It is charged that in conferring power of appointment. on the Directors of the Chamber of Commerce, Article 1, Section 3, of the Constitution is violated. Article 1, Section 3, is as follows: "All free men, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges; but in consideration of public services."

The case of State v. Washburn, 167 Mo. 680, 67 S.W. 592, 90 Am.St.Rep. 430, by the Supreme Court of Missouri, is the only precedent cited in support of the position taken. In that case the Article of the Missouri Constitution dealt with in this respect is as follows: "The General Assembly shall not pass any local or special law * * * Granting to any corporation, association or individual any special or exclusive right, privilege or immunity." Mo. St.Ann.Const. art. 4, § 53.

■ The Act before the Missouri Court confined the selection of a minority member of the election commission of three, to one nominated by a committee of the party opposed to the party to which the other two members of the commission belonged. The case holds this was class legislation,—class legislation for the reason that it discriminated between political parties. We do not believe the law we have in question here is subject to that vice. We are aware that the Missouri case has bearing on another question herein, and in consideration thereof merits thoughtful and careful consideration.

■ Article 1, Section 19, of the Constitution is invoked as invalidating the Act in question. It is as follows: "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchized, except by the due course of the law of the land."

The protection of the individual rights afforded by this provision is very broad. The Act authorizes the levy, collection of a tax for public purposes, names an agency for the expending of the fund. This agency derives its authority from the legislative Act. Here we can perceive no denial of due process of law guaranteed by the constitutional provision last above quoted.

Article 2 of the Constitution is as follows: "The powers of the Government of the State of Texas shall be divided into

three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted."

Appellant asserts that the confiding of the appointment of three of the members of the Board of County Development to the Directors of the Chamber of Commerce is violative of the quoted provision of the Constitution. The case of State v. Washburn, supra, is cited in support. In that case the article of the Constitution of the State of Missouri before the court was as follows: "The powers of government shall be divided into three distinct departments—the legislative, executive and judicial—each of which shall be confided to a separate magistracy, and no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, except in the instances in this constitution expressly directed or permitted." Mo.St.Ann.Const. art. 3.

In the essential and vital particulars the two constitutional provisions are almost identical. The Missouri court held that an act providing that a member of an election commission board should be appointed from those suggested by a committee of a political party was tantamount to conferring the power of appointment on the committee of such political party; that in this respect the act violated the constitutional provision above quoted. In the course of the opinion it is said [167 Mo. 680, 67 S. W. 595, 90 Am.St.Rep. 430]: "When, therefore, the general assembly undertook to confer the power to appoint the third election commissioner of Kansas City on a body of men not officially connected with the state government, it undertook, in effect, to create an office to exercise the governmental function of filling by appointment another public office, and not only to create such office, but to name by description the men who were to fill it; in effect, creating the office and appointing the incumbents, making the law and executing it."

The decision in this case was by a divided court. It must be conceded that there is a division of authority on the proposition. The practice in this State seems to have been somewhat at variance with the doctrine laid down in the Missouri case.

The Texas Relief Commission was provided for by Chapter 37, First Called Session, 43d Legislature, 1933, p. 118, Vernon's Ann.Civ.St. art. 842b. By the terms thereof the commission of nine provided for were selected and to be selected as follows: Chairman of the Industrial Accident Board, President of the Judicial Council; three to be appointed by the Lieutenant Governor, three by the Speaker of the House of Representatives, and one by the Governor. A member of that Commission had been appointed by the Speaker of the House. A short time after the appointment the Speaker decreed the removal of such appointee and made another appointment, such subsequent appointee taking the oath and undertaking to qualify. Quo warranto proceedings were instituted by the State against the last appointee. The trial court sustained the quo warranto proceedings, and, in effect, ordered the first appointee reinstated. The case reached the Supreme Court on certified questions. Dorenfield v. State, 123 Tex. 467, 73 S.W.2d 83. The judgment of the trial court was in effect approved. It is true, the question of the validity of the appointment of the prior appointee, Holliday, was not discussed—only the validity of his attempted removal was involved. However, it was clearly and unequivocally stated that Holliday, by his appointment by the Speaker of the House, became a State officer. It is true that the Speaker of the House is an officer of the State; in respect to the functioning of the legislative branch of the government, an executive officer. However, he is in all respects an officer of the legislative branch of the government, and his power and function is as such. In this case, it is true, the appointing power was exercised by one elected by the people, or rather by their representatives. However, he was not elected with the contemplation that he should exercise other than legislative functions. As stated, the court did not discuss, but assumed the legality of Holliday's appointment. But the legality of his appointment was by the judgment vindicated. We do not deem Dorenfield v. State, supra, as conclusive here, but think that it has considerable bearing.

The facts of the case of Davis v. City of Taylor, supra, in respect to the aspect of

the instant case which is now under consideration bear close analogy. There, a city was involved. A Board of Development was provided for, consisting of fifteen members. The City Charter provided that the first Board should consist of the Directors of the Chamber of Commerce, and thereafter the appointment should be from a list named by the Board of Development. Clearly all this would conflict with the constitutional provision as expounded in State v. Washburn, supra. In the City of Taylor case the opinion of the Supreme Court was largely devoted to a discussion of whether the charter provision violated Article 8, Section 3, of the Constitution, that: "Taxes shall be levied and collected by general laws and for public purposes only." It was held that the charter provision was legal and valid and did not violate that section of the Constitution. We have had the advantage of a certified copy of the assignments of error made by appellants in the application for the writ of error. Some of the assignments, we think, are broad enough to raise the question of the constitutionality of the Act under Article 2 of the Constitution. Writ of error was granted on the ground of the importance of the question. In the course of the opinion this was said [123 Tex. 39, 67 S.W.2d 1035]: "We resolve the other questions raised by plaintiffs in error against them. We do not deem an extended discussion necessary, but, in addition to what we have said, we make reference to the opinion of the Honorable Court of Civil Appeals. Bland v. City of Taylor, 37 S.W.2d 291." (The case before the Supreme Court bore that title in the Court of Appeals.) Referring to the case in the Court of Civil Appeals, we find this statement from the opinion [37 S.W.2d 294]: "No contention is made that the manner prescribed for their selection was unconstitutional or illegal. On the contrary, both the charter and the ordinance expressly prescribed the mode of selection. Article 1175, R.S., enumerating in particular certain powers that may be exercised by a home-rule city, provides in the first section thereof that one of such powers of the city should be 'the creation of offices, the manner and mode of selecting officers and prescribing their qualifications, duties, compensation and tenure of office.' We find nothing in the ordinance adopted which contravenes this or any other statute in so far as the selection of the membership of said board is concerned."

■ We are not of the opinion that the case of Davis v. City of Taylor, supra, absolutely forecloses the question here against appellants. However, we think it is strongly persuasive. The powers of the Legislature should be as broad and adequate as those of a city operating under the Home Rule Amendment. Under that amendment a city can exercise such legislative power as is not forbidden by the Constitution or the general laws. The only limit on the Legislature to enact laws is the Constitution of the United States and of the State.

The division of governmental powers into three departments is common to most, if not all, of the State Constitutions. Provision against the exercise by one division of power entrusted to another is likewise characteristic.

In several cases in jurisdictions other than ours the legality of the delegation of the power of nomination and appointment to nonofficial bodies has been recognized. 46 Corpus Juris, pp. 950, 951; McCurdy v. Jessop, 126 Md. 318, 95 A. 37; In re Bulger, 45 Cal. 553; Overshiner v. State, 156 Ind. 187, 59 N.E. 468, 51 L.R.A. 748, 83 Am.St.Rep. 187; State v. Sowards, 64 Okl.Cr. 430, 82 P.2d 324; Bradley v. Board of Zoning Adjustment, 255 Mass. 160, 150 N.E. 892.

In principle we can see little difference in confiding the power of appointment to an office other than the executive department and confiding it to an unofficial body.

■ The assignment is overruled.

Under the terms of the law one of the three members of the Board to be selected by the Directors of the Chamber of Commerce must be a member in good standing of organized labor. Appellants urge that this provision violates Article 2 and Article 1, Section 3, of the Constitution. In effect, the law makes it mandatory that one member of the Board be a member of a labor union. In a sense, this is a discrimination in favor of organized labor. There is no prohibition against the entire Board being members of organized labor. If the Legislature may make the qualification of one member of the Board depend on his belonging to a labor union, it might, by the same reasoning, provide that no member should be a member of organized labor.

Mechem asserts this proposition: "But under our republican form of government,

1036

the legislature can not make the holding of any particular political opinion a test of the right to hold office." See Mechem, Public Offices and Officers, 1st Ed., § 96, and cases cited Note 4.

In a general sort of way the proposition announced by Professor Mechem, somewhat extended, is recognized in the following authorities: 9 Tex.Jur. pp. 551, 552; Nixon v. Herndon, 273 U.S. 536, 47 S.Ct. 446, 71 L.Ed. 759.

We do not think the Legislature may make eligibility to office dependent on religious, social, industrial or economic views. However, it is unnecessary to decide as to this particular provision unless its invalidity would strike down the entire law. The question of eligibility to membership in a Board of County Development is only before us in that aspect. Strike from the law every word creating this provision and there remains a clearly expressed and intelligible act in every respect. This is one of the tests used in determining whether, a portion of the law being invalid, the entire law must fall. If with the elision a clearly expressed legislative act remains, this is an evidence, not conclusive of course, that the balance of the law should stand. 9 Tex.Jur. 474.

The prime purpose of the Act was to enable counties of the class specified to levy, collect and expend a tax for advertising purposes. The provision in question is not so associated with the balance of the law that if it be invalid the valid portion must fall with it. We do not hold that the provision in question is unconstitutional. It is unnecessary to decide the question.

The assignment is overruled.

We are not unmindful of the gravity and importance of the questions involved in this case. Our minds are not free from doubt as to the correctness of the disposition of some of same. The Act is entitled to the presumption of constitutionality. If this presumption were clearly overthrown, our duty would be clear. However, our duty is likewise clear to uphold the law unless such presumption of constitutionality be overthrown.

In our opinion, the Act in question was not beyond the power of the Legislature to enact.

We desire to express our appreciation to counsel for their candor, sincerity and frankness in the discussion of the important issues involved in this case. On their part an earnest desire for the application of the law to the facts involved has been evidenced throughout.

The judgment of the trial court is affirmed.

HIGGINS, J., not sitting.